ORIGINAL

FILED IN OPEN COURT
U.S.D.C. Atlanta

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

JUL 1 9 2006

LUTHER D. THOMAS, Clerk
By: _____
Deputy Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL INDICTMENT |
| | : | |
| v. | : | (SUPERSEDING) |
| | : | |
| SYED HARIS AHMED | : | NO. 1:06-CR-147-CC |
| | : | |
| and | : | |
| | : | |
| EHSANUL ISLAM SADEQUEE | : | |

THE GRAND JURY CHARGES THAT:

## COUNT ONE
### (Conspiracy to Provide Material Support to Terrorists)

#### The Conspiracy

1.    Beginning in or before late 2004, the exact date being unknown to the Grand Jury, and continuing until on or about April 20, 2006, in the Northern District of Georgia and elsewhere, the defendants, SYED HARIS AHMED and EHSANUL ISLAM SADEQUEE, and others known and unknown to the Grand Jury, did knowingly and unlawfully combine, conspire, and agree to provide material support and resources, and to conceal and disguise the nature, location, source, and ownership of material support and resources, knowing and intending that the material support and resources were to be used in preparation for and in carrying out a violation of Title 18, United States Code, Section 956 (conspiracy to kill, kidnap, maim, or injure persons or damage property in a foreign country)

and Section 2332b (acts of terrorism transcending national boundaries).

<u>Background</u>

2.    "Violent jihad," as used in this Indictment, refers to planning, facilitating, preparing for, and engaging in acts of physical violence, including murder, kidnaping, maiming, assault, and damage to and destruction of property, against civilian and government targets, in purported defense of Muslims or retaliation for acts committed against Muslims, in the United States and in foreign nations.

3.    Defendant SYED HARIS AHMED was born in Pakistan in 1984 and is a naturalized United States citizen who has supported violent jihad.

4.    Defendant EHSANUL ISLAM SADEQUEE, also known by the nickname "Shifa," was born in Virginia in 1986 and is a United States citizen of Bangladeshi descent who also has supported violent jihad.

<u>Manner and Means of the Conspiracy</u>

5.    The manner and means by which the conspirators sought to accomplish the purposes of the conspiracy included, among others, the following:

6.    The defendants developed and maintained contact with each other and with other supporters of violent jihad who were located in the United States and in foreign nations.

7.    The defendants engaged in physical and rudimentary paramilitary training to prepare for participation in violent jihad.

8.    The defendants traveled to Toronto, Canada, to meet in person with other supporters of violent jihad and to discuss how to participate in, facilitate, and otherwise further violent jihad activities in the United States and other foreign nations.

9.    The defendants traveled to the Washington, D.C., area and recorded brief "casing" video clips of symbolic and infrastructure targets of potential terrorist attacks, including the United States Capitol.  The defendants made these video clips to establish their credentials with other supporters of violent jihad as well as for use in support of violent jihad.  Defendant SADEQUEE then conveyed, or caused to be conveyed, the video clips to Younis Tsouli, a co-conspirator not charged herein, who was located in the United Kingdom and who maintained the video clips along with other violent jihad materials.

10.    Defendant AHMED, aided by defendant SADEQUEE and others, traveled to Pakistan to seek religious education and paramilitary training to prepare to engage in violent jihad in Kashmir or elsewhere, with the goal of joining Lashkar-e-Tayyiba a/k/a Lashkar-e-Taiba ("Army of the Righteous"), a group designated by the United States Secretary of State as a foreign terrorist organization pursuant to section 219 of the Immigration and Nationality Act at all times relevant to this Indictment.

11. Defendant SADEQUEE traveled to Bangladesh and continued his activities in support of violent jihad.

12. Defendant AHMED returned to the United States and continued his activities in support of violent jihad.

13. The defendants used multiple email addresses, coded language, and encrypted materials; attempted to detect and evade surveillance; made false statements to federal agents; and otherwise used various means and methods to conceal their communications, activities, and plans from detection, understanding, and disruption by government authorities in the United States and elsewhere.

## Overt Acts

14. In furtherance of the conspiracy, the conspirators committed and caused to be committed, in the Northern District of Georgia and elsewhere, the following overt acts, among others:

### Establishing Contacts with Violent Jihad Supporters

15. Beginning in or before late 2004, and continuing until SADEQUEE's arrest by the FBI in Bangladesh on April 20, 2006, AHMED and SADEQUEE communicated with each other, with co-conspirators, and with other supporters of violent jihad, known and unknown to the Grand Jury, in the United States and abroad.

### Physical Training for Violent Jihad

16. In or around late 2004, AHMED and SADEQUEE discussed the need to engage in physical training to become prepared to engage in violent jihad.

-4-

17.    On several occasions in or around late 2004 and early 2005, AHMED, SADEQUEE, and another person known to the Grand Jury engaged in physical and rudimentary paramilitary training, including activities with paintball guns, in Northwestern Georgia.

### Travel to Canada to Meet Other Supporters of Violent Jihad

18.    On or about February 26, 2005, SADEQUEE purchased Greyhound bus tickets for himself and AHMED to travel from Atlanta, Georgia, to Toronto, Canada.

19.    On or about March 6, 2005, AHMED and SADEQUEE traveled together from Atlanta to Toronto by bus.  They returned from Toronto to Atlanta together on or about March 13, 2005.

20.    While in Toronto, AHMED and SADEQUEE met in person with other supporters of violent jihad.  During these meetings, AHMED, SADEQUEE, and others identified and discussed strategic locations in the United States that were suitable for terrorist attack, including military bases and oil storage facilities and refineries. They explored how they might disrupt the world-wide Global Positioning System (GPS).  They also discussed a plan for members of the group to travel to Pakistan to seek and receive paramilitary training that they would then use to engage in violent jihad.

21.    In or about March or April 2005, after their trip to Canada, AHMED and SADEQUEE further discussed these plans for violent jihad in the United States, including the possibility of attacking Dobbins Air Reserve Base in Marietta, Georgia.

<u>Travel to Washington, D.C., to Film Potential Terrorist</u>
<u>Targets and Sharing the Video Clips with a Co-conspirator Abroad</u>

22.  On or about April 10 and 11, 2005, AHMED and SADEQUEE traveled together in AHMED's pickup truck from Atlanta to the Washington, D.C., area and back.

23.  On or about April 11, 2005, AHMED and SADEQUEE made short digital video recordings ("video clips") of symbolic and infrastructure targets of potential terrorist attacks in the Washington, D.C., area, including the United States Capitol; the headquarters building of the World Bank in downtown Washington; the Masonic Temple in Alexandria, Virginia; and a group of large fuel storage tanks near I-95 in northern Virginia.

24.  After returning to Atlanta together on or about April 11, 2005, AHMED gave the video clips to SADEQUEE, so that SADEQUEE could send the videos to co-conspirators and other supporters of violent jihad abroad.

25.  Both before and after the April 10-11, 2005, trip to Washington, D.C., SADEQUEE communicated with Younis Tsouli, a co-conspirator located in the United Kingdom, who is not charged herein.

26.  Sometime on or before October 21, 2005, Younis Tsouli stored the video clips recorded by AHMED and SADEQUEE of potential Washington, D.C., area terrorist targets on computer equipment in his home in the United Kingdom, along with other materials useful in promoting, preparing for, and committing terrorist attacks in

support of violent jihad, including a video showing how to make a car bomb; a video on firearms and how to make silencers; videos of paramilitary training camps; videos depicting beheadings by terrorists associated with Abu Musab Al-Zarqawi; and a video of the hijacked aircraft crashing into the World Trade Center buildings in New York City on September 11, 2001.

<u>AHMED's Travel to Pakistan</u>

27. Between March and July 2005, SADEQUEE provided AHMED with the name and contact information of Abu Umar, a co-conspirator not indicted herein. SADEQUEE advised that Abu Umar could assist AHMED in obtaining paramilitary training in Pakistan to prepare for violent jihad.

28. On or about July 17, 2005, AHMED traveled from Atlanta to Pakistan for the purposes of studying in a madrassa (an Islamic religious school), then obtaining paramilitary training, and ultimately engaging in violent jihad in Kashmir or elsewhere, including in the United States if so requested. AHMED intended to join and fight with Lashkar-e-Tayyiba ("Army of the Righteous").

<u>SADEQUEE's Travel to Bangladesh</u>

29. On or about August 18, 2005, SADEQUEE traveled from Atlanta through New York to Bangladesh to get married and to further pursue his activities in support of violent jihad.

30. On or about August 18, 2005, SADEQUEE carried concealed in the lining of his suitcase two CD-ROMs, one of which contained encrypted files. SADEQUEE also carried in his luggage a Fairfax

County, Virginia, Visitor's Center map of the Washington, D.C., area, including the sites of the four potential terrorist targets videotaped by AHMED and SADEQUEE on April 10-11, 2005.

31.  On or about August 18, 2005, SADEQUEE was interviewed by federal agents as he transited through John F. Kennedy International Airport in New York. When asked about prior foreign travels, SADEQUEE, in reference to his early 2005 trip to Canada, falsely stated that he had traveled alone.

32.  Between on or about August 19, 2005, and April 20, 2006, while outside the United States, SADEQUEE continued to communicate with his co-conspirators and other supporters of violent jihad.

### AHMED's Continued Activities in Atlanta and Efforts to Conceal the Conspiracy

33.  On or about August 19, 2005, having been unsuccessful in his attempt to enter a madrassa (an Islamic religious school) or obtain paramilitary training in Pakistan, AHMED returned to Atlanta.

34.  On or about August 19, 2005, AHMED was interviewed by federal agents at Hartsfield Jackson International Airport in Atlanta and made false and misleading statements about his travel to Canada and Pakistan. Among other things, AHMED falsely stated that he went to Canada simply to visit friends and family and that he went to Pakistan simply to see family and attend a religious school.

35.  On or about September 13, 2005, AHMED researched shaped explosive charges and methods to defeat surveillance by government authorities.

36.  On or about November 3, 2005, AHMED cautioned another individual to avoid discussing certain topics on the telephone, as AHMED believed that his telephone calls and those of other persons connected to SADEQUEE were being monitored by government authorities.

37.  On or about November 27, 2005, AHMED communicated to another supporter of violent jihad AHMED's intent to try again to go abroad to train for and engage in violent jihad.  AHMED also encouraged this individual to read the federal terrorism indictment against Jose Padilla, claiming that the indictment provided information on how much the government can monitor and how much code the government knows.

38.  On or about January 9, 2006, AHMED communicated to another individual his intent to return to Pakistan to try again to train for and engage in violent jihad.

39.  On or about January 13, 2006, AHMED reviewed a copy of Gun List magazine, a periodical for gun enthusiasts and would-be buyers and sellers of firearms.

40.  On several occasions between September 2005 and March 2006, AHMED engaged in efforts to detect and evade suspected surveillance by government authorities.

41.  In March 2006, AHMED was approached by agents of the FBI

Joint Terrorism Task Force (JTTF) and engaged in a series of interviews with them.  In these interviews, AHMED attempted to conceal the true nature of his, SADEQUEE's, and their co-conspirators' discussions, activities, and plans.

42.  In March 2006, after his JTTF interviews began and after engaging in efforts to evade surveillance, AHMED communicated with SADEQUEE, who was still in Bangladesh.  AHMED warned SADEQUEE about the FBI's interest in their activities and advised SADEQUEE not to return to the United States.

### Overall Efforts to Conceal the Conspiracy

43.  During the conspiracy, AHMED and SADEQUEE communicated with each other and with co-conspirators and other supporters of violent jihad using multiple email addresses, coded language, encrypted materials, and various other means and methods intended to prevent detection, understanding, and disruption of their discussions, activities, and plans by government authorities.

All in violation of Title 18, United States Code, Section 2339A(a).

### COUNT TWO
#### (Providing and Attempting to Provide
#### Material Support to Terrorists)

1.  The allegations in paragraphs 2 through 43 of Count One of this Indictment are re-alleged and incorporated by reference as if set forth fully here.

2.  From in or before late 2004, the exact date being unknown

to the Grand Jury, and continuing until on or about April 20, 2006, in the Northern District of Georgia and elsewhere, defendants SYED HARIS AHMED and EHSANUL ISLAM SADEQUEE, aided and abetted by each other and others known and unknown to the Grand Jury, did knowingly provide and attempt to provide material support and resources, and to conceal and disguise the nature, location, source, and ownership of material support and resources, knowing and intending that the material support and resources were to be used in preparation for and in carrying out a violation of Title 18, United States Code, Sections 956 (conspiracy to kill, kidnap, maim, or injure persons or damage property in a foreign country) and 2332b (acts of terrorism transcending national boundaries), all in violation of Title 18, United States Code, Sections 2339A(a) and 2.

## COUNT THREE
### (Conspiracy to Provide Material Support
### to a Designated Foreign Terrorist Organization)

1.    The allegations in paragraphs 2 through 43 of Count One of this Indictment are re-alleged and incorporated by reference as if set forth fully here.

2.    Beginning in or before late 2004, the exact date being unknown to the Grand Jury, and continuing until on or about April 20, 2006, in the Northern District of Georgia and elsewhere, the defendants, SYED HARIS AHMED and EHSANUL ISLAM SADEQUEE, and other persons known and unknown to the Grand Jury, did knowingly combine, conspire, and agree to provide material support and resources to a

foreign terrorist organization, namely, Lashkar-e-Tayyiba ("Army of the Righteous"), by agreeing to provide personnel, including one or both of the defendants, to work under the direction and control of Lashkar-e-Tayyiba, a designated foreign terrorist organization, knowing that Lashkar-e-Tayyiba has engaged and engages in terrorist activity and terrorism, in violation of Title 18, United States Code, Section 2339B(a)(1).

### COUNT FOUR
### (Attempting to Provide Material Support
### to a Designated Foreign Terrorist Organization)

1.    The allegations in paragraphs 2 through 43 of Count One of this Indictment are re-alleged and incorporated by reference as if set forth fully here.

2.    From in or before late 2004, the exact date being unknown to the Grand Jury, and continuing until on or about April 20, 2006, in the Northern District of Georgia and elsewhere, defendant SYED HARIS AHMED, aided and abetted by defendant EHSANUL ISLAM SADEQUEE and others known and unknown to the Grand Jury, did knowingly attempt to provide material support and resources to a foreign terrorist organization, namely, Lashkar-e-Tayyiba ("Army of the Righteous"), by attempting to provide personnel, including defendant AHMED, to work under the direction and control of Lashkar-e-Tayyiba, a designated foreign terrorist organization, knowing that Lashkar-e-Tayyiba has engaged and engages in terrorist

activity and terrorism, in violation of Title 18, United States
Code, Sections 2339B(a)(1) and 2.

A _____ BILL

_____
FOREPERSON


/s/ DAVID E. NAHMIAS
UNITED STATES ATTORNEY
Georgia Bar No. 534106
600 U.S. Courthouse
75 Spring Street, S.W.
Atlanta, Georgia 30303
V: 404-581-6000
F: 404-581-6181


/s/ KATHERINE B. MONAHAN
ASSISTANT UNITED STATES ATTORNEY
Georgia Bar No. 045737


/s/ ALEXIS L. COLLINS
TRIAL ATTORNEY
COUNTERTERRORISM SECTION
U.S. DEPARTMENT OF JUSTICE
Wash., D.C. Bar No. 474599


/s/ ROBERT C.I. McBURNEY
ASSISTANT UNITED STATES ATTORNEY
Georgia Bar No. 481070