ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN OPEN COURT
U.S.D.C ATLANTA

DEC 0 9 2008

JAMES N. HATTEN, CLERK
By: _____ Deputy Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA | : CRIMINAL INDICTMENT |
| v. | : NO. 1:06-CR-147-WSD-GGB |
| SYED HARIS AHMED | : (SECOND SUPERSEDING) |

THE GRAND JURY CHARGES THAT:

### COUNT ONE
(Conspiracy to Provide Material Support to Terrorists)

#### The Conspiracy

1.   Beginning in or before late 2004, the exact date being unknown to the Grand Jury, and continuing until on or about April 20, 2006, in the Northern District of Georgia and elsewhere, defendant SYED HARIS AHMED, Ehsanul Islam Sadequee (not charged in this indictment), and others known and unknown to the Grand Jury did knowingly and unlawfully combine, conspire, and agree to provide material support and resources, namely personnel and property, and to conceal and disguise the nature, location, source, and ownership of said material support and resources, knowing and intending that the material support and resources were to be used in preparation for and in carrying out a violation of Title 18, United States Code, Section 956(a) (conspiracy to kill, kidnap, maim, or injure persons in a foreign country) and Section 2332b (acts of terrorism transcending national boundaries).

## Background

2. "Violent jihad," as used in this Indictment, refers to planning, facilitating, preparing for, and engaging in acts of physical violence, including murder, kidnaping, maiming, assault, and damage to and destruction of property, against civilian and government targets, in purported defense of Muslims or retaliation for acts committed against Muslims, in the United States and in foreign nations.

3. Defendant SYED HARIS AHMED, commonly referred to as "Haris" and also known by the on-line names Turab and thandymazaq, among others, was born in Pakistan in 1984 and is a naturalized United States citizen who has supported violent jihad.

4. Principal co-conspirator Ehsanul Islam Sadequee, commonly referred to by the nickname "Shifa" and also known by the on-line names Aboo Khubayb Almuwahhid and Khubz, among others, was born in Virginia in 1986 and is a United States citizen of Bangladeshi descent who also has supported violent jihad.

## Manner and Means of the Conspiracy

5. The manner and means by which the conspirators sought to accomplish the purposes of the conspiracy included, among others, the following:

6. AHMED, Sadequee, and other co-conspirators developed relationships and maintained contact with each other and with other supporters of violent jihad who were located in the United States and in foreign nations, to include Canada, the United Kingdom,

-2-

Pakistan, and Bosnia Herzegovina.

7. AHMED and Sadequee engaged in physical and rudimentary paramilitary training to prepare for participation in violent jihad.

8. AHMED and Sadequee traveled to Toronto, Canada, to meet with Fahim Ahmad, a/k/a James, a co-conspirator not charged in this indictment, and other supporters of violent jihad and to discuss how to participate in, facilitate, and otherwise further violent jihad activities in the United States and foreign nations.

9. AHMED and Sadequee traveled to the Washington, D.C., area and recorded short "casing" videos of symbolic and infrastructure targets for potential terrorist attacks, including the Pentagon and the United States Capitol. AHMED provided the vehicle and the camera for this trip. AHMED and Sadequee made these video clips to establish their credentials with other supporters of violent jihad as well as for use in support of violent jihad. Sadequee then conveyed several of the video clips to Younis Tsouli, a/k/a Irhabi007, and Aabid Hussein Khan, a/k/a Abu Umar, co-conspirators not charged in this indictment, each of whom saved the video clips along with other violent jihad materials.

10. AHMED and his co-conspirators, including Sadequee, Khan, and Fahim Ahmad, communicated on-line to advance their plan to travel overseas to prepare for, participate in, facilitate, and otherwise further violent jihad activities in the United States and other nations.

11. AHMED, aided by Sadequee and others, traveled to Pakistan to obtain religious education and paramilitary training that would prepare him to engage in violent jihad in Kashmir or elsewhere, a goal AHMED sought to further by joining Lashkar-e-Tayyiba ("Army of the Righteous"), a/k/a Lashkar-e-Taiba, a/k/a LET, a/k/a LT, a group designated by the United States Secretary of State as a foreign terrorist organization pursuant to section 219 of the Immigration and Nationality Act at all times relevant to this Indictment.

12. Sadequee traveled to Bangladesh and continued his activities in support of violent jihad.

13. AHMED returned to the United States and continued his activities in support of violent jihad, including communications with Zubair Ahmed, a co-conspirator not charged in this indictment.

14. AHMED and his co-conspirators, to include Sadequee, Tsouli, Khan, Fahim Ahmad, and Zubair Ahmed, used multiple email addresses, coded language, and encrypted materials; attempted to detect and evade surveillance; made false statements to federal agents; and otherwise used various means and methods to conceal their communications, activities, and plans from detection, understanding, and disruption by government authorities in the United States and elsewhere.

## Overt Acts

15. In furtherance of the conspiracy, defendant AHMED and his co-conspirators committed and caused to be committed, in the

Northern District of Georgia and elsewhere, the following overt acts, among others:

### Establishing Contacts with Violent Jihad Supporters

16. Beginning in or before late 2004, and continuing until Sadequee's arrest by the FBI in Bangladesh on April 20, 2006, AHMED and Sadequee communicated with each other, with other co-conspirators, and with other supporters of violent jihad, known and unknown to the Grand Jury, in the United States and abroad, about their efforts to promote and support acts of violent jihad.

### Physical Training for Violent Jihad

17. In or around late 2004, AHMED and Sadequee discussed the need to engage in physical training to become prepared to engage in violent jihad.

18. On several occasions in or around late 2004 and early 2005, AHMED, Sadequee, and another person known to the Grand Jury engaged in physical and rudimentary paramilitary training in Northern Georgia.

### Traveling to Canada to Meet Other Supporters of Violent Jihad

19. On or about February 26, 2005, Sadequee purchased Greyhound bus tickets for AHMED and himself to travel from Atlanta, Georgia, to Toronto, Canada.

20. On or about March 6, 2005, AHMED and Sadequee traveled together from Atlanta to Toronto by bus. They returned from Toronto to Atlanta together on or about March 13, 2005.

21. While in Toronto, AHMED and Sadequee met with other supporters of violent jihad, to include co-conspirators Fahim Ahmad and an individual known as "Azdi Omani" (not charged in this indictment). During these meetings, AHMED, Sadequee, and others identified and discussed strategic locations in the United States that were suitable for terrorist attack, including military bases and oil storage facilities and refineries. They explored how they might disrupt the world-wide Global Positioning System (GPS). They also discussed a plan for members of the group to travel to Pakistan to seek and receive paramilitary training that they would then use to engage in violent jihad.

22. In or about March or April 2005, after their trip to Canada, AHMED and Sadequee further discussed plans for violent jihad in the United States, including the possibility of attacking Dobbins Air Reserve Base in Marietta, Georgia.

23. Sometime in or about March and April 2005, Sadequee advised AHMED that Aabid Hussein Khan could assist AHMED, Sadequee, and others in finding and gaining admission to training camps in Pakistan so that they could receive paramilitary training to prepare for violent jihad. During this same time, AHMED and Sadequee continued to develop with Fahim Ahmad, Azdi Omani, Khan, and others a plan to travel to Pakistan to receive paramilitary training that they would use to engage in violent jihad, to include joining Lashkar-e-Tayyiba.

24. On or about March 15, 2005, AHMED and Zubair Ahmed

discussed the possibility of taking out loans to finance the "hijrah" or migration to Pakistan.

### Traveling to Washington, D.C., to Film Potential Terrorist Targets and Sharing the Video Clips with Co-conspirators Abroad

25. On or about April 10 and 11, 2005, AHMED and Sadequee traveled together in AHMED's pickup truck from Atlanta to the Washington, D.C., area and back.

26. On or about April 10 and 11, 2005, AHMED and Sadequee filmed short digital video recordings ("video clips") of symbolic and infrastructure targets for potential terrorist attacks in the Washington, D.C., area, including the United States Capitol; the Pentagon; the World Bank and the Department of Energy headquarters buildings in downtown Washington; the Masonic Temple in Alexandria, Virginia; and a group of large fuel storage tanks near I-95 in northern Virginia. In one of the videos, filmed from the vehicle being driven by AHMED, Sadequee can be heard identifying the location as "this is where our brothers attacked the Pentagon."

27. After returning to Atlanta together on or about April 11, 2005, AHMED gave the camera and memory stick containing the video clips to Sadequee, so that Sadequee could send the videos to co-conspirators and other supporters of violent jihad abroad.

28. On or about April 20, 2005, AHMED sent a heavily coded communication to Sadequee that Sadequee was to forward to co-conspirators Fahim Ahmad, Azdi Omani, and Aabid Hussein Khan concerning the logistics and importance of getting to "curry place"

(Pakistan).

29. On or about April 21, 2005, AHMED, Sadequee and Khan discussed the value of seeking access to paramilitary training camps affiliated with Lashkar-e-Tayyiba.

30. On or about April 22, 2005, AHMED and Khan discussed the logistics and financing required to obtain paramilitary training in Pakistan and then to join the "mujaheedin" (holy warriors) fighting in Kashmir or elsewhere.

31. On or about April 26, 2005, Sadequee sent at least two of the Washington, D.C., area video clips that AHMED and he recorded to Khan. Sadequee disguised the clips in compressed files entitled "jimmy's 13th birthday" and "volleyball contest." Khan stored and transported these video clips of potential terrorist targets on portable digital media that he had with him on June 6, 2006, when he and his belongings were searched by counter-terrorism investigators in the United Kingdom upon Khan's return from Pakistan. Khan also had saved on his digital media communications with AHMED, Sadequee, Fahim Ahmad, Azdi Omani, and other supporters of violent jihad concerning plans for obtaining paramilitary training and pursuing violent jihad, as well as other materials useful in promoting, preparing for, and committing terrorist attacks in support of violent jihad, including maps and timetables for the Washington, D.C., and New York City public transit systems; documents from the New York City Department of Transportation detailing truck routes into the city; schematics of the financial

district in lower Manhattan; aerial photos and other information about the U.S. Naval Base in Guantanamo Bay, Cuba; lectures and other propaganda materials from Al-Qaida spokesmen; and maps and other information concerning paramilitary training camps in Pakistan.

32. Both before and after the April 10-11, 2005, trip to Washington, D.C., Sadequee communicated with Younis Tsouli, a/k/a Irhabi007. Tsouli stored on digital media several of the video clips recorded by AHMED and Sadequee of potential Washington, D.C., area terrorist targets, along with other materials useful in promoting, preparing for, and committing terrorist attacks in support of violent jihad, including a video showing how to make a car bomb; a video on firearms and how to make silencers; videos of paramilitary training camps; videos depicting beheadings by terrorists associated with Abu Musab Al-Zarqawi; and a video of the hijacked aircraft crashing into the World Trade Center buildings in New York City on September 11, 2001, all of which were found when counter-terrorism investigators in the United Kingdom searched Tsouli and his residence on or about October 21, 2005.

### AHMED's Travel to Pakistan

33. On or about July 17, 2005, AHMED traveled from Atlanta to Pakistan for the purposes of studying in a madrassa (an Islamic religious school), then obtaining paramilitary training, and ultimately engaging in violent jihad in Kashmir or elsewhere, including in the United States if so requested. AHMED intended to

join and fight with Lashkar-e-Tayyiba. While in Pakistan, AHMED met with Khan in an effort to further his plan of gaining admittance to a paramilitary training camp.

### Sadequee's Travel to Bangladesh

34. On or about August 18, 2005, Sadequee departed Atlanta for Bangladesh. The purposes of his travel included getting married, continuing his schooling, and pursuing his activities in support of violent jihad.

35. On or about August 18, 2005, as he departed for Bangladesh, Sadequee carried concealed in the lining of his suitcase two CD-ROMs, one containing a pornographic video and the other encrypted files. Sadequee also carried in his luggage a Fairfax County, Virginia, Visitor's Center map of the Washington, D.C., area, that included all of the potential terrorist targets videotaped by AHMED and Sadequee on April 10-11, 2005.

36. On or about August 18, 2005, Sadequee was interviewed by federal agents as he transited through John F. Kennedy International Airport in New York. When asked about prior foreign travel, Sadequee, in reference to his early 2005 trip to Canada with AHMED, falsely stated that he had traveled alone.

37. Between on or about August 19, 2005, and April 20, 2006, while outside the United States, Sadequee continued to communicate with AHMED, other co-conspirators, and other supporters of violent jihad, including Younis Tsouli and co-conspirator Mirsad Bektasevic, a/k/a Maximus (not charged in this indictment), who

possessed over 20 pounds of plastic explosives, firearms, bomb-making materials, and a manifesto promising an attack on Western interests, all of which were seized from him by counter-terrorism investigators in Bosnia Herzegovina on or about October 19, 2005.

### AHMED's Continued Activities in Atlanta and Efforts to Conceal the Conspiracy

38. On or about August 19, 2005, having been unsuccessful in his attempt to enter a madrassa or obtain paramilitary training in Pakistan, AHMED returned to Atlanta.

39. On or about August 19, 2005, AHMED was interviewed by federal agents at Hartsfield Jackson International Airport in Atlanta and made false and misleading statements about his travel to Canada and Pakistan. Among other things, AHMED falsely stated that he went to Canada simply to visit friends and family and that he went to Pakistan merely to see family and attend a religious school.

40. On or about August 21, 2005, AHMED discussed with Zubair Ahmed his failure to obtain paramilitary training while in Pakistan.

41. On or about September 13, 2005, AHMED researched shaped explosive charges and methods to defeat surveillance by government authorities.

42. On or about November 3, 2005, AHMED cautioned another individual to avoid discussing certain topics on the telephone, as AHMED believed that his telephone calls and those of other persons

connected to Sadequee were being monitored by government authorities.

43. On or about November 27, 2005, AHMED communicated to Zubair Ahmed his intent to try again to go abroad to train for and engage in violent jihad. AHMED also encouraged Zubair Ahmed to read the federal terrorism indictment against Jose Padilla, claiming that the indictment provided information on how much the government can monitor and how much code the government knows.

44. On or about December 2 and December 3, 2005, AHMED spoke with Zubair Ahmed about the need to meet in person to discuss matters relating to AHMED's desire to return to Pakistan to train for and engage in violent jihad that AHMED believed could not be safely discussed on the telephone.

45. On or about January 9, 2006, AHMED communicated to another individual his intent to return to Pakistan to try again to train for and engage in violent jihad.

46. In March 2006, AHMED was approached by agents of the FBI Joint Terrorism Task Force (JTTF) and voluntarily engaged in a series of interviews with them. In these interviews, AHMED repeatedly attempted to conceal the true nature of his, Sadequee's, and their co-conspirators' discussions, activities, and plans concerning violent jihad.

47. In March 2006, after his JTTF interviews had begun and after engaging in efforts to evade surveillance, AHMED twice communicated with Sadequee, who was still in Bangladesh. First, on

or about March 19, 2006, AHMED traveled to Sadequee's family home in Roswell, where he met with Sadequee's brother, who accompanied AHMED to a nearby gas station where the pair called Sadequee using a pay phone. Second, on or about March 21, 2006, AHMED drove to a public library where he contacted Sadequee using a French Yahoo! e-mail address that AHMED had concealed from the FBI during his interviews. AHMED warned Sadequee about the FBI's interest in their activities and advised Sadequee not to return to the United States.

### Overall Efforts to Conceal the Conspiracy

48. During the conspiracy, AHMED and Sadequee communicated with each other and with co-conspirators and other supporters of violent jihad using multiple email addresses, coded language, encrypted materials, and various other means and methods intended to prevent detection, understanding, and disruption of their discussions, activities, and plans by government authorities.

All in violation of Title 18, United States Code, Section 2339A(a).

### COUNT TWO
### (Providing and Attempting to Provide Material Support to Terrorists)

1. The allegations in paragraphs 2 through 48 of Count One of this Indictment are re-alleged and incorporated by reference as if set forth fully here.

2. From in or before late 2004, the exact date being unknown

to the Grand Jury, and continuing until on or about March 23, 2006, in the Northern District of Georgia and elsewhere, defendant SYED HARIS AHMED, aided and abetted by Ehsanul Islam Sadequee and others known and unknown to the Grand Jury, did knowingly provide and attempt to provide material support and resources, namely personnel and property, and conceal and disguise and attempt to conceal and disguise the nature, location, source, and ownership of said material support and resources, knowing and intending that the material support and resources were to be used in preparation for and in carrying out a violation of Title 18, United States Code, Sections 956(a) (conspiracy to kill, kidnap, maim, or injure persons in a foreign country) and 2332b (acts of terrorism transcending national boundaries), all in violation of Title 18, United States Code, Sections 2339A(a) and 2.

### COUNT THREE
### (Conspiracy to Provide Material Support to a Designated Foreign Terrorist Organization)

1. The allegations in paragraphs 2 through 48 of Count One of this Indictment are re-alleged and incorporated by reference as if set forth fully here.

2. Beginning in or before late 2004, the exact date being unknown to the Grand Jury, and continuing until on or about April 20, 2006, in the Northern District of Georgia and elsewhere, defendant SYED HARIS AHMED, Ehsanul Islam Sadequee, and other persons known and unknown to the Grand Jury did knowingly combine,

conspire, and agree to provide material support and resources to a designated foreign terrorist organization, namely, Lashkar-e-Tayyiba ("Army of the Righteous"), by agreeing to provide personnel, including AHMED and/or Sadequee, to work under the direction and control of Lashkar-e-Tayyiba, knowing that Lashkar-e-Tayyiba has engaged and engages in terrorist activity and terrorism, in violation of Title 18, United States Code, Section 2339B(a)(1).

## COUNT FOUR
### (Attempting to Provide Material Support to a Designated Foreign Terrorist Organization)

1. The allegations in paragraphs 2 through 48 of Count One of this Indictment are re-alleged and incorporated by reference as if set forth fully here.

2. From in or before late 2004, the exact date being unknown to the Grand Jury, and continuing until on or about March 23, 2006, in the Northern District of Georgia and elsewhere, defendant SYED HARIS AHMED, aided and abetted by Ehsanul Islam Sadequee and others known and unknown to the Grand Jury, did knowingly attempt to provide material support and resources to a designated foreign terrorist organization, namely, Lashkar-e-Tayyiba ("Army of the Righteous"), by attempting to provide personnel, including defendant AHMED, to work under the direction and control of Lashkar-e-Tayyiba, knowing that Lashkar-e-Tayyiba has engaged and

engages in terrorist activity and terrorism, in violation of Title 18, United States Code, Sections 2339B(a)(1) and 2.

A \_\_\_\_True\_\_\_\_ BILL

*/s/ Arthur Brier*

FOREPERSON

*/s/ David Nahmias*

DAVID E. NAHMIAS
UNITED STATES ATTORNEY
Georgia Bar No. 534106

*/s/ Robert C.I. McBurney*

ROBERT C.I. McBURNEY
ASSISTANT UNITED STATES ATTORNEY
Georgia Bar No. 481070

*/s/ Alexis L. Collins*

ALEXIS L. COLLINS
TRIAL ATTORNEY
COUNTERTERRORISM SECTION
U.S. DEPARTMENT OF JUSTICE
Wash., D.C. Bar No. 474599

600 U.S. Courthouse
75 Spring Street SW
Atlanta, Georgia 30303
V: 404-581-6000
F: 404-581-6181

engages in terrorist activity and terrorism, in violation of Title 18, United States Code, Sections 2339B(a)(1) and 2.

A \_\_\_\_True\_\_\_\_ BILL

*/s/ Arthur Brier*

FOREPERSON

*/s/ David Nahmias*

DAVID E. NAHMIAS
UNITED STATES ATTORNEY
Georgia Bar No. 534106

*/s/ Robert C.I. McBurney*

ROBERT C.I. McBURNEY
ASSISTANT UNITED STATES ATTORNEY
Georgia Bar No. 481070

*/s/ Alexis L. Collins*

ALEXIS L. COLLINS
TRIAL ATTORNEY
COUNTERTERRORISM SECTION
U.S. DEPARTMENT OF JUSTICE
Wash., D.C. Bar No. 474599

600 U.S. Courthouse
75 Spring Street SW
Atlanta, Georgia 30303
V: 404-581-6000
F: 404-581-6181