IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA          )
                                  )
                Plaintiff,        )      CRIMINAL ACTION FILE
                                  )      NO. 1:06-CR-147-WSD-2
v.                                )
                                  )      ATLANTA, GEORGIA
EHSANUL ISLAM SADEQUEE (2)        )
                                  )
                Defendant.        )
_____)


          TRANSCRIPT OF AUDIO RECORDED PROCEEDINGS
          BEFORE THE HONORABLE GERRILYN G. BRILL,
                UNITED STATES MAGISTRATE JUDGE

                 Monday, January 5, 2009




APPEARANCES OF COUNSEL:

For the Plaintiff:          OFFICE OF THE U.S. ATTORNEY
                            (By:  David E. Nahmias
                                     Robert C. McBurney)

For the Defendant:          GARLAND SAMUEL & LOEB
                            (By:  Donald Franklin Samuel)




   *Proceedings recorded by digital audio, then transcribed by
        mechanical stenography and computer by*
               NICHOLAS A. MARRONE, RMR, CRR
                  1714 U. S. Courthouse
                  75 Spring Street, S.W.
                   Atlanta, GA  30303
                     (404) 215-1486

1    *(FTR Media File Judge Brill 1834:)*

2                    Monday Morning Session

3                    January 5, 2009

4                        10:13 a.m.

5                        -- -- --

6                P R O C E E D I N G S

7                        -- -- --

8                    (In open court:)

9        THE COURT:  This is the arraignment on the Third

10   Superseding Indictment.

11       Mr. Samuel, has Mr. Sadequee been provided with a

12   copy of the Third Superseding Indictment?

13       MR. SAMUEL:  Yes, Your Honor.

14       THE COURT:  All right.  Mr. Sadequee, now is the

15   time when you are called upon to enter your plea, which

16   I expect will be not guilty, to the Third Superseding

17   Indictment.

18       You are entitled to have the indictment read or

19   explained to you at this time before you enter your plea.

20       Do you need any reading -- or do you want me to

21   read or explain the indictment to you before you enter your

22   plea?

23       THE DEFENDANT:  No, I have read it.

24       THE COURT:  So, Mr. Samuel, does your client waive

25   the formal reading of the indictment?

1       MR. SAMUEL:  Right, it doesn't need to be read in

2  open court.  Thank you, Your Honor.

3       THE COURT:  All right.  Then, Mr. McBurney, would

4  you verify his signature on the plea.

5       MR. McBURNEY:  Judge, Mr. Sadequee has declined to

6  sign the Plea with Counsel Form.  Mr. Samuel has signed it.

7  I can verify his.

8       THE COURT:  All right.

9       MR. McBURNEY:  I guess I could ask Mr. Sadequee on

10  the record if he's not signing anything.

11       Mr. Sadequee, this is a Plea with Counsel

12  Form.  Had you signed it you would have been telling the

13  Court that you are entering a plea of not guilty to the four

14  counts in your Third Superseding Indictment.

15       Mr. Samuel, is this your signature on the form?

16       MR. SAMUEL:  It is.

17       THE COURT:  And, Mr. Sadequee, you are declining to

18  sign the form; is that correct?

19       THE DEFENDANT:  Yes.

20       MR. McBURNEY:  Okay.

21       THE COURT:  All right.  Mr. Samuel, I'm assuming

22  that you just want the Court to enter a not guilty plea?

23       MR. SAMUEL:  Yes, Your Honor.

24       THE COURT:  All right.  The Court docket will

25  reflect I will enter a not guilty plea for him.

1        And the case has previously been transferred to

2  District Court Judge Duffey who will handle the trial of the

3  case.

4        Let's see.  Is there any need, Mr. Samuel, for me

5  to have another pretrial conference on this case?

6        MR. SAMUEL:  There may be, Your Honor.  I'm not

7  sure that we have to schedule it today.

8        Mr. Sadequee does want to address the Court

9  today.

10        I think -- I mean, there are certainly going to be

11  matters -- you are doing the CIPA hearings, aren't you?

12        THE COURT:  I don't know yet.  We have to check.  I

13  will check with Judge Duffey.

14        MR. SAMUEL:  We are certainly going to be back

15  before you, I assume, one or more times.  Whether you want to

16  set a pretrial conference today or not or some kind of status

17  conference I don't know.

18        THE COURT:  Well, I will check with Judge Duffey to

19  see what role, if any -- unless he's given you some

20  indication of what role he would like me to play with respect

21  to the superseding indictment?

22        MR. McBURNEY:  We do have a status conference with

23  Judge Duffey already calendared for by the scheduling order

24  in about three weeks, late January.

25        THE COURT:  All right.  Well, I will check with him

1   on that.

2           All right.  What does Mr. Sadequee want to talk

3   about?  I don't really -- Mr. Sadequee, I will give you a

4   brief opportunity, although this really isn't the --

5           THE DEFENDANT:  *(A phrase in a foreign*

6   *language.)*  As the Court knows, back in midSeptember, there

7   was a hearing, a closed, a sealed hearing, with regards to

8   the covert interrogation program which I had requested a

9   hearing for.

10          On October 28th, about a month later,

11  Brian Richardson, who is a client of Stephanie Kearns, who

12  used to be my lawyer and was the counsel which I had concerns

13  over about this covert interrogation program, back in the

14  September 9th hearing I mentioned it to the Court and

15  I mentioned that I believe Brian Richardson, her client, who

16  was in the SHU with me was involved in this.

17          So on October 28th he attacked me right after a

18  hearing, a meeting with Don Samuel and my other lawyer,

19  Mr. Khurrum Wahid.

20          Since then a number of things have

21  happened.  I believe I have been subject to a government

22  program where they have entered a demon, I can't be exact,

23  because --

24          THE COURT:  Say that again?

25          THE DEFENDANT:  A demon or a spirit of some sort

1  into me, for what purposes I'm not exactly entirely clear at

2  this point.

3          But I request, as I did back in September, for a

4  hearing into this covert interrogation program.  And also my

5  counsel had filed some motion for -- with regards to

6  confidential informants and then the government -- my

7  understanding is that the government has said that their

8  response will be dependent upon me bringing more information

9  in a hearing about this and providing witnesses.

10          So there are some witnesses, I mean, which I would

11  like to bring, and if the Court requests that this is the

12  time that I should mention some of my witnesses and some of

13  what I believe that they would say, then I could provide that

14  right now, if that's necessary.

15          Because back in September, my understanding was

16  that we can't have a hearing until some information is

17  presented to the Court as to what witnesses I would intend

18  to -- or I intend to bring and what type of testimonies I

19  believe that they would give to the Court.

20          THE COURT:  Have you discussed this with your new

21  attorney?

22          And remind me what the other attorney's name is.

23          MR. SAMUEL:  Khurrum Wahid.

24          THE COURT:  Mr. Wahid.  Have you discussed this

25  with Mr. Wahid?

          THE DEFENDANT:  I haven't been able to discuss this

in detail, although I did discuss some of the things, and he

said that he would investigate some of the issues.  But he --

he's in Miami, and I haven't been able to contact him on a

regular basis, and I haven't seen, I mean, him in quite some

time.  I believe it's been a month or so since I last saw

him.

          But some of the issues I spoke with Mr. Wahid, and

he said he would look into it, and then he really --

          THE COURT:  Let me ask the government.  What's

the -- there was a motion that was filed right before

Mr. Wahid was appointed regarding this allegation.  Do you

know the status of that?

          MR. NAHMIAS:  We responded with regard to the

confidential informants to make it very clear that we had

absolutely no informants from within the defense camp, the

defense lawyers or anyone associated with the defense.

          We also said that we are not obligated to disclose

whether we have any other informants in the world regarding

this case, and there are obvious sensitivities about

informants.  And that's where it was left.

          With regard to this attack by Mr. Richardson,

I think the warden has responded to counsel and we obviously

immediately investigated.

          Mr. Richardson -- they were crossing paths in a

1　room after having seen their counsel, and Mr. Richardson, who

2　was being restrained by two guards and had leg manacles and

3　handcuffs on, broke away from his two guards and head-butted

4　the defendant, causing very minor injuries, and was

5　immediately restrained.

6　　　　And Mr. Richardson has been disciplined for that

7　incident, and the prison is now going to ensure that there is

8　no way that Mr. Sadequee can be in Mr. Richardson's

9　presence.

10　　　　But it was not a -- Mr. Richardson broke away from

11　two guards who were holding him while he was handcuffed and

12　leg manacled.  And so there was no involvement whatsoever by

13　the government in that incident.

14　　　　THE COURT:  All right.  With respect to the motion

15　on confidential informants, that was, as I recall, filed

16　after I certified it ready for trial.  But I will check with

17　Judge Duffey and see if he wants me to do anything further on

18　that.

19　　　　Mr. Sadequee's comments raise the issue of his

20　mental state.

21　　　　Mr. Samuel, is Mr. Wahid aware of his contentions

22　regarding demons, or does he have any concerns regarding the

23　defendant's mental state?

24　　　　MR. SAMUEL:  We discussed these issues, Your Honor.

25　　　　THE COURT:  As far as the attack by Mr. Richardson,

1    it sounds as if the prison authorities are responding to it,

2    and that the Court -- that there is no need for the Court to

3    get involved in that.

4        So I think that covers everything at this

5    time.  There is really nothing further we can do.

6        THE DEFENDANT:  I also wanted to ask Mr. Samuel to

7    file a motion for speedy trial I just want to put on the

8    record.

9        THE COURT:  There is a date scheduled for the

10    trial, and I think that will be a firm date.

11        But, Mr. Samuel, you can tell Mr. Wahid at

12    Mr. Sadequee's request.

13        THE DEFENDANT:  Would it be possible to move it

14    forward?   I mean --

15        THE COURT:  Judge Duffey is the one that would have

16    the trial, so your attorneys would have to check with

17    him.  I doubt it, because there are a number of things

18    pending.

19        THE DEFENDANT:  With regards to the hearing about

20    confidential informants, even beyond -- I mean, without or

21    outside of the defense counsel, I believe there is other

22    confidential informants, such as my co-defendant Haris;

23    Mr. Ahmed, that is.  And, you know, I would like to have -- I

24    believe if I bring certain witnesses and question them, you

25    know, I will be able to establish that.  So --

THE COURT:  That's something that you really need
to discuss with your attorneys, and your attorneys can
discuss with Mr. Ahmed's attorney, Mr. Martin, who is in the
courtroom now, and Mr. Samuel can discuss that with him.

But it's not really something for me or any judge
to get involved with at this stage.  There is always the
possibility in a multidefendant case -- and I don't have any
indication that that's happening here -- but there is always
the possibility that one defendant will start cooperating
with the government and in fact be an informant against the
other defendant.  I'm sure your attorneys have discussed that
possibility with you.

All right.  Anything further?

MR. SAMUEL:  Judge, there is one thing I want to
raise.

We have tried to get some medical records from the
prison, and Mr. McBurney was facilitating that.  There seems
to be some confusion at the prison whether they will release
that to me or not.

At one point I was told they had to come to me, and
Mr. McBurney reported to me that the prison will only release
them to Mr. Sadequee, then he has to give them to me because
of privacy reasons.

He's being held in prison.  No, we are not going to
give you any of your medical records.  It has to come through

1    your attorneys.

2            I would generally not ask you to get involved in

3    this, but the prison doesn't talk to me anymore, they refuse

4    to have any communications with me.

5            So I go to Mr. McBurney, who has been very --

6    always is very helpful in being the messenger at this

7    point.  I would ask the Court to order the government, not

8    really the U.S. Attorney's Office as much as the prison, to

9    provide all medical records that they have.

10            And I'm referring to all physical medical issues,

11    psychological medical reports, all of which they have, but

12    apparently it takes either an act of Congress or a court

13    order to get those released to us.

14            If there are any medical records they have

15    whatsoever that are being withheld from us, we would like to

16    know why they are being withheld and whether we can have a

17    hearing to unwithhold them.

18            Otherwise something -- there must be some mechanism

19    for me to get these records without having to go back and

20    forth with Mr. McBurney, he getting different reports from

21    the prison, and my client is getting different reports when

22    he asks.  I would just like a court order releasing all

23    medical records up-to-date, through today, January 5th, '09,

24    to Mr. Samuel.

25            THE COURT:  All right.  Mr. McBurney, do you have

1  any objection to the Court issuing an order for that?

2          MR. McBURNEY:  I would ask that we start with a

3  subpoena.

4          I don't dispute Mr. Samuel's frustration.  He's

5  been very good at letting me know what's going on, and at

6  latest report the Bureau of Prisons said that they would

7  release any and all records to the defendant, they are his

8  records, but they were weary of releasing them to some third

9  party, even counsel, absent a waiver from the defendant.

10         So my suggestion is before we invoke the Court's

11  authority via an order and set some precedent that way, we

12  try a subpoena.  Plus I will call again today to say, you

13  know, you guys need to do something, the Court is trying

14  figure out why this is taking so long.

15         THE COURT:  In appointed cases, generally there has

16  to be a court order in order to get a subpoena.

17         MR. SAMUEL:  The subpoenas say it is a court order

18  anyway.

19         THE COURT:  I mean, I could do the order

20  authorizing the subpoena.

21         MR. McBURNEY:  Right, but that's an order

22  authorizing a subpoena, as opposed to telling BOP what to

23  do.

24         THE COURT:  Right.

25         MR. McBURNEY:  I know that's an intermediate step,

but we would ask for that.  And if that doesn't work, then I
think BOP needs to explain to you what is going on.

THE COURT:  All right.  I will do an order
authorizing the subpoena.  If you would present that to me,
Mr. Samuel.

I know I have done that before in other cases even
for the Federal Defender Program.

MR. SAMUEL:  I'm sorry?

THE COURT:  I know that I have done orders --

MR. SAMUEL:  Yes.

THE COURT:  -- authorizing subpoenas for medical
records from prisons.  I don't recall specifically whether it
was the federal pen, but I know I have done that before for
appointed counsel.  And I will do that in this case if you
present such an order.

MR. SAMUEL:  I will get it in writing in
twenty-four hours.

THE COURT:  All right.  Anything further?

MR. SAMUEL:  Mr. Sadequee has one more issue.

THE DEFENDANT:  I had asked the warden in the
prison about obtaining an exorcist, and he said that he
would -- he was not sure if that would be possible.

So I would like to request if the Court could ask
the warden or something to, you know, allow that to take
place, for me to see an exorcist.

```
1          THE COURT:  I will decline that request.

2          All right.  We will be in recess.

3          THE CLERK:  All rise.

4          MR. McBURNEY:  Judge, I'm sorry, before -- we had

5    two points.

6          One on the issue of discovery.  Discovery is

7    complete as far as we know.  There are hard drives that are

8    available for defense review, or if we get blank hard drives,

9    we will give them copies of the hard drives.

10          Then we discussed at Defendant Ahmed's arraignment

11    the issue of new motions adopting and transferring over, if

12    you will, all of this Court's rulings, reports and

13    recommendations, and all the parties filings.

14          You had indicated you were going to file

15    something.  We would make the same request for Defendant

16    Sadequee.

17          THE COURT:  All right.  We will do an order

18    transferring or making sure that the docket reflects that all

19    of the previous motions and pleadings are applicable to this

20    new case.

21          MR. McBURNEY:  And Judge Duffey in his orders that

22    have been coming out has begun to do that.  He's been issuing

23    some rulings adopting your R&Rs and incorporating the fact

24    that there has been superseding indictments.

25          THE COURT:  All right.  We will do whatever needs
```

1  to be done to make sure that the previous docket applies to

2  the superseding case.

3        MR. McBURNEY:  Okay.  Thank you.

4        THE COURT:  All right.  Anything further?

5        MR. SAMUEL:  No, Judge.

6        THE COURT:  All right.  We will be in recess.

7        THE CLERK:  All rise.

8            (Proceedings adjourn at 10:31 a.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                C E R T I F I C A T E

2

3    UNITED STATES OF AMERICA        :
                                     :
4    NORTHERN DISTRICT OF GEORGIA    :

5

6            I, Nicholas A. Marrone, RMR, CRR, Official Court

7    Reporter of the United States District Court for the Northern

8    District of Georgia, do hereby certify to the best of my

9    ability that the foregoing 16 pages constitute a true

10   transcript of audio recorded proceedings had before the said

11   Court, held in the city of Atlanta, Georgia, in the matter

12   therein stated.

13           In testimony whereof, I hereunto set my hand on

14   this, the 28th day of January, 2009.

15

16

17                        /s/ Nicholas A. Marrone

18                        _____
                          NICHOLAS A. MARRONE, RMR, CRR
19                        Registered Merit Reporter
                          Certified Realtime Reporter
20                        Official Court Reporter
                          Northern District of Georgia
21

22

23

24

25