1          IN THE UNITED STATES DISTRICT COURT
        FOR THE NORTHERN DISTRICT OF GEORGIA
2                    ATLANTA DIVISION

3  UNITED STATES OF AMERICA          )
                                     )
4                  Plaintiff,        )     CRIMINAL ACTION FILE
                                     )     NO. 1:06-CR-147-WSD-2
5  v.                                )
                                     )     ATLANTA, GEORGIA
6  ENSANUL ISLAM SADEQUEE (2)        )
                                     )
7                  Defendant.        )
   _____)

8

9                TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE WILLIAM S. DUFFEY, JR.,
10               UNITED STATES DISTRICT JUDGE

11               Monday, January 26, 2009

12


13
   APPEARANCES OF COUNSEL:
14
   For the Plaintiff:          OFFICE OF THE U.S. ATTORNEY
15                             (By:  David E. Nahmias
                                     Robert C. McBurney)
16
                              DEPARTMENT OF JUSTICE
17                             (By:  Alexis L. Collins)

18  For the Defendant:         GARLAND SAMUEL & LOEB
                              (By:  Donald Franklin Samuel)
19
                              LAW OFFICE OF KHURRUM B. WAHID
20                             (By:  Khurrum B. Wahid)

21

22       *Proceedings recorded by mechanical stenography*
         *and computer-aided transcript produced by*
23               NICHOLAS A. MARRONE, RMR, CRR
                 1714 U. S. Courthouse
24                75 Spring Street, S.W.
                  Atlanta, GA  30303
25                 (404) 215-1486

1          Monday Morning Session

2           January 26, 2009

3             10:39 a.m.

4             -- -- --

5          P R O C E E D I N G S

6             -- -- --

7           (In open court:)

8          THE COURT:  Good morning.  This is the scheduled

9    status conference in the United States v. Ehsanul Islam

10   Sadequee, which is Criminal Action No. 06-CR-147.

11          Would counsel please announce their appearances?

12          MR. McBURNEY:  Robert McBurney with the

13   United States.

14          Seated with me is David Nahmias, U.S. Attorney, and

15   Alexis Collins, a trial attorney from the National Security

16   Division of Main Justice.

17          THE COURT:  Good morning.

18          MR. SAMUEL:  Don Samuel on behalf of the defendant.

19   And with me with is Khurrum Wahid, and Ehsanul Sadequee is

20   seated at counsel table as well.

21          THE COURT:  Good morning.

22          And good morning, Mr. Sadequee.

23          Could we move that monitor so I could see

24   everybody?

25          I thought it would be helpful since I have been

assigned to this case in light of Judge Cooper's change to

senior status in February to give you a report on what I have

done and where I stand on pending matters so that -- and what

my view is now that I have gotten much further into the case

and have a better feel for the legal issues and what it will

take to process the case for trial, what I find from my

review of the scheduling order that we had agreed to with

counsel earlier.

I think it was helpful that of the judges that

could be assigned to this, that because I already have

security clearances, that we have been able to continue to

process the case I think maybe even faster than it might have

been processed before Judge Cooper because of the security

clearances that I already had and my familiarity with these

procedures.

I tried a CIPA case in Montgomery, Alabama, so I'm

familiar with those processes and I'm comfortable with how I

can best conduct those, not only to deal with the classified

information, but also to make sure that the defendants'

rights are protected in that process.

I have reviewed the record.  That's taken some

time, although I committed a lot of time to doing

that.  While I haven't -- I can't remember exactly how many

pending motions there were and R&Rs, it seemed to me that if

you added them all up, there was probably eleven to thirteen,

somewhere in that range.  All but three of those have been
decided and on which I have issued orders.

As you know from the orders that I have issued,
hopefully you have a full understanding of my reasoning, that
that record then is complete on why I made the decisions that
I made.  And we intend to continue to issue orders that give
you our view of the case law and our reasoning behind the
decisions that we reach.

And I would expect that I will be able to issue
orders on what I think are the three remaining R&Rs hopefully
in the next couple of weeks so that those will all be
concluded.

As I said, now that I have reviewed the record, I
have gotten substantially into the law in the case, and have
decided the motions that have been presented and upon which
we have already issued orders, I went back over the weekend
to look at the scheduling order to see if there was any
possibility of collapsing the time to get these cases to
trial earlier.

And I have concluded that even when this order was
entered -- and as I recall, I expedited some of the dates for
the processing of the case at that time using my
understanding and experience in another unrelated kind of
classified information case that I had in Alabama.  But
I thought can this schedule be further collapsed, and I have

concluded looking at it and actually looking at a calendar,

that not only is that not possible, but I think it would be

inappropriate to further collapse it, mainly because I don't

think that would allow the defendants to assert all of the

things that they might want to assert, and I'm not going to

rush this case to the prejudice of the defendants.

So while we still have a few months until we

actually begin the trial of the case, I do not think that the

schedule can be expedited.  And I think if I did that, that

it would be imprudent to do so.

So I think the schedule is the appropriate one.

And as recently as this weekend, I renewed my view that the

schedule that is in place is the appropriate schedule for the

case.

So that is an update on my involvement in the case

since it was assigned to me just a couple of months

ago.  I wanted to have this conference because I wanted to

introduce myself to you, Mr. Sadequee, and to let you know

who it is that is responsible for presiding over your case,

because I thought that was the right thing to do at this

time, now that I had some familiarity with the case.  And

rather than interrupt my working on the orders, I thought

that it made sense to wait until the status conference for

you to at least see the person that is presiding over your

matter.

1          So with that, let's go into the other matters that

2    we want to take up at the status conference.  And I will

3    begin with the government.

4          MR. McBURNEY:  Thank you, Judge.

5          The one area that the government finds most

6    difficult to keep in line with the Court's schedule involves

7    witnesses or evidence located outside the United States.  And

8    that is why I want to talk about the Rule 15 motion that the

9    defense has filed and that we responded to.

10         The defense identified seven individuals, only one

11   of whom in their motion as it stood then indicated a

12   willingness or an interest or an ability to travel to the

13   United States.

14         And the government stands ready to assist that

15   person.  That's Manzu Huq, if I pronounce it correctly,

16   H-u-k.

17         THE COURT:  That's the aunt that lives in Canada?

18         MR. McBURNEY:  Yes, sir.

19         And if we get the right identifying information

20   from the defense, we will do everything we can to ensure that

21   she gets a visa, if a visa is required, and can be here in

22   court for any proceeding where her attendance is required.

23         THE COURT:  Mr. Samuel, what is the timetable for

24   getting the information that would be required to get the

25   authorizations for Ms. Huq?

1          MR. WAHID:  Khurrum Wahid, Your Honor.  Huq.

2          THE COURT:  Huq.

3          MR. WAHID:  I believe that is the easiest of our

4     witnesses, and I can probably get that information by the end

5     of the week.

6          THE COURT:  Okay, great.  And like I did in the

7     last hearing, if you could just let my chambers know where we

8     stand at the end of the week to make sure that if for some

9     reason you are not able to get the information, how much

10    longer you will need.

11         And then I want the government to report back to me

12    the following Friday what the status is with respect to the

13    information that you received and whether or not there will

14    be any impediments to having this witness appear.

15         MR. McBURNEY:  Beyond that, Judge, the government

16    sees it as, if not impossible, an extremely difficult process

17    of conducting depositions of the other individuals who have

18    neither indicated a willingness to sit for them or an ability

19    to sit for them, meaning they are not locatable or they are

20    in prisons in other countries.

21         So I wanted to flag that for the Court.  I think

22    that is something the Court, the defense and the government

23    should address today as we look to either a June, if the

24    other case resolves itself, or an August, midAugust trial

25    date for Defendant Sadequee.

1  THE COURT:  I think there has to be -- I have only

2  dealt with this overseas deposition issue once before, and I

3  have read briefly -- because I wasn't going to rule on the

4  motion today, but I have read briefly in your submissions on

5  this, and I think that there has to be some predicate

6  foundation that, you know, we wouldn't be going through some

7  process that is futile, because you go over there and

8  somebody says -- and I know that that has happened at least

9  in one case I have had where they say I'm glad you are here,

10  but I'm not talking to you.

11  So there has got to be some predicate with respect

12  to each of these witnesses that if they are not available,

13  that they would be available through a deposition, because if

14  they are not, I don't think that I am empowered nor should

15  I authorize it.

16  MR. WAHID:  Yes.  Three of the individuals are in

17  Canada, two of them are in custody, one is not in custody.

18  We have spoken to the attorneys for those

19  individuals.

20  THE COURT:  Who would -- can you just help me on

21  that?

22  MR. WAHID:  Sure.  That would be Mubin Shaikh,

23  Fahim Ahmed and Jahmeel James.

24  THE COURT:  So you have talked to their lawyers?

25  MR. WAHID:  Yes.  Mr. James I believe was released,

although the charges I was told by his attorney aren't

dismissed yet.  The Canadian government has twelve months

from when they release him apparently in order to continue

the prosecution, otherwise it would get dismissed.

So we have spoken to the attorneys for those three,

and as of now as it stands, they are not willing to allow us

to speak directly to their clients.  They are willing to

cooperate with us in any other -- you know, in terms of if

there are other ways other than directly speaking to the

clients.  But they aren't right now willing to allow us to

speak to their clients.

THE COURT:  Well, taking that logical next step,

does that mean that they at least at this point are not

willing to allow them to testify?

MR. WAHID:  That would be correct at this point for

those three individuals.

It really was somewhat predicated upon the timeline

of the trials in Canada.  And upon my last contact with the

attorneys, which was right around the time I filed this

motion, which was late December, they were at that time

expecting a trial sometime mid this year, which is around

when ours is.

It may be a situation where they said their clients

would be willing once their cases are concluded, so that's

why I didn't withdraw those names at this point.  But in all

candor, I'm telling you what I have been told.

THE COURT:  And let me tell you how I interpreted this.  I mean, you are preparing the case for trial, and this was your wish list.  If you thought that these people were available, you certainly wanted to bring them to my attention and get the names on the table.  So I understand that.

But I also understand that with respect to one or more of these people -- obviously with respect to at least three of them it's fluid.  And it doesn't surprise me if they are under indictment in Canada that at this time that they are exercising their prerogative not to assist.  So I understand that.

MR. WAHID:  All right.  As to the -- there are two others, Younes Tsouli and Ahbid Khan, who are in the U.K. and are both sentenced at this point in time.  We have spoken to their attorneys -- I have spoken to each of their attorneys.  We were trying to arrange a conference call with myself, Mr. Samuel, the two attorneys, the one that represents Mr. Tsouli and the one that represents Mr. Khan for this week.

Somewhere around the 2nd or 3rd of January, they had said they were going to go and speak to their clients about their willingness to talk to us.  The indication -- the initial indication I got is that they were willing to talk with us, but they needed to get permission -- the attorneys

1    needed to get written permission.

2          They were both being held in facilities that

3    weren't in the London proper area, so that would take some

4    time to go and come back.

5          So my goal is this week to find out --

6          THE COURT:  You mean permissions from the

7    authorities?

8          MR. WAHID:  Well, first I'm trying to get

9    permission from -- an agreement that their clients are

10   willing to talk to us.  And then once we get that down, then

11   the logistics of if we need to go through the prison system

12   or how we would do it.

13         THE COURT:  Okay.

14         MR. WAHID:  So my goal is this week to have an

15   answer.  Assuming that the attorneys made it out to those

16   facilities, my goal is I am trying to set up a call for

17   Wednesday to try to find out whether or not we have got an

18   agreement that Mr. Tsouli and Mr. Khan are willing to speak

19   to us on behalf of Mr. Sadequee's case.

20         THE COURT:  For then those two witnesses, can you

21   add to the report that you will send to us on Friday what the

22   status is with respect to them?

23         MR. WAHID:  Yes.

24         THE COURT:  All right.  Can I --

25         MR. WAHID:  There is one more witness.

THE COURT:  I know, but before we do that, with
respect to the witnesses that are in Canada that at least at
this point are not willing to meet with you, I'm assuming
that if you ultimately determine that they are not willing,
that your motion with respect to them will be withdrawn
because there wouldn't be any foundation for it?  Is that a
fair assumption on my part?

MR. WAHID:  Yes, that's a fair assumption.

THE COURT:  So there is one more, Mr. Saeed.

MR. WAHID:  Yes, Mr. Hafeez Muhammad Saeed, who is
head of Lashkar-e-Tayyiba, which is based in Pakistan.  The
allegation is that the material support is to benefit
Lashkar-e-Tayyiba.

In the interim between the time I filed this motion
and today, I believe Mr. Saeed has become a special guest of
the Pakistani government in some custodial scenario.

I don't know at this stage how to have access to
Mr. Saeed.  I'm not yet willing to withdraw the name,
Your Honor, but I'm working on trying to figure out whether
or not there could be a substitute that would represent the
organization which is really what we are trying to do,
someone who would represent the organization who we would in
some way get a statement from.

THE COURT:  I'm willing to let that stay open for
some reasonable amount of time, and it seems to me that with

just that general description of what you want them for, that
I'm probably going to have to have a more detailed
articulation of what exactly that witness would testify about
so that I could make a determination of whether or not that
is somebody that I will authorize to be deposed because their
information is something that would be relevant and
admissible at the trial.

MR. WAHID:  Right.  I could expand a little, which
is the idea that the material support is for those
organizations, that the actual items that are being alleged
Mr. Sadequee provided, you know, would those in fact be of
any support to those organizations.

The organization -- at that time LET was a
completely lawful organization within the boundaries of
Pakistan, so we felt there would be no issue with them
talking to us freely and honestly about their objectives and
what would be of benefit to them and what wouldn't.

So in light of recent events, though, I'm just
reevaluating that situation.

THE COURT:  Okay.  So like all the matters that you
are going to keep us posted on, please also keep us posted on
this particular witness or the substitute.

But I think at some point, if it's not going to be
Mr. Saeed and it's going to be some substitute, we have got
to get that name on the table so that we can consider a

motion with respect to the person that ultimately you would like to call so I can decide whether or not to allow the deposition to be taken.

MR. WAHID:  All right.

THE COURT:  So I want to stay in touch on the issue.

MR. WAHID:  If I have any information by Friday, I will include it in the report.  If not, I will at least include it in the report that I am still working on it and don't have any information.

THE COURT:  All right.

MR. WAHID:  Thank you.

THE COURT:  Maybe the best thing for me would be let's say that you are still working on that.  If we could make Friday the update date so that as you get more information -- I don't want you to have to do something every day, but every Friday at least if there is an open issue, I will be reminded of what the issue is because at some point I might want to get everybody on the telephone and say we have got to do something with respect to this person or the substitute in order to make sure that we keep the schedule.

MR. WAHID:  Your Honor, is this something that we are filing -- are we going to electronically file this or just submit it to chambers and copy the government on it?

THE COURT:  I'm happy with that, if that's okay

with the government?

MR. McBURNEY:  Judge, I was envisioning an e-mail status report to Ms. Birnbaum that she would get to you and we would obviously cc counsel for the defense, and vice versa.

THE COURT:  I mean, it is easier for me to manage information that way, if it's okay with everybody else.

MR. WAHID:  That's fine.  I appreciate it.

THE COURT:  Thank you.

Any response to that, Mr. McBurney?

MR. McBURNEY:  Very briefly.

One, for none of the witnesses identified in the Rule 15 motion was there in the government's perspective a sufficient showing of willingness to testify, and you have addressed that.

But it also is a requirement that the testimony be helpful.  Not just that they would testify, but their testimony would be helpful.  And you have already begun to ask for it for the LET representative, but if it turns out that the Canadians are willing to speak or the logistics work in the United Kingdom for a deposition, because they wouldn't come to the United States, they are convicted terrorists, we would need to know up front -- and the Court would need to know -- to assess that the testimony that they are willing to share would in fact be helpful.

1          THE COURT:  I understand that.  Here is my thinking

2     on the process.

3          You know, there is no reason for us to get into

4     those matters if somebody is not going to be available.  So

5     let's begin with their availability and willingness to

6     testify.

7          And then if we define people who are available and

8     willing to testify, then I suspect that Mr. Wahid is going to

9     want to at that time say, okay, now that I have had a chance

10    to talk to them and here is what I expect their testimony to

11    be, that we would get on the telephone and we would set a

12    schedule for that predicate information to be provided to me

13    and what your response date would be, and basically allow you

14    to update your motion in a manner consistent with the

15    ongoing -- with the interim scheduling order so that we

16    wouldn't delay the trial.

17          MR. McBURNEY:  Great, because that's the second

18    point is that the logistics involved of doing a recorded

19    deposition in a British prison I'm confident are enormous.

20    And so the more time we have to do that obviously the better

21    so that we don't delay things.

22          THE COURT:  All right.  Anything else from the

23    government on Mr. Sadequee's case?

24          MR. McBURNEY:  Not at this time.

25          THE COURT:  All right.  Mr. Samuel, Mr. Wahid,

1    anything from you?

2         MR. SAMUEL:  They didn't mention the *Daubert* issue,

3    if we could just have the same understanding with regard to

4    the *Daubert* issues that we had for the prior hearing, we

5    would expect the government to comply with their notice

6    requirement.  And that will raise issues, but they are the

7    exact same issues in this case as the Ahmed case.

8         THE COURT:  And just so that this record in this

9    case is clear, the discussion that we had about *Daubert* is

10   that there is a requirement for *Daubert* -- for witnesses to

11   be -- expert witnesses to be identified, there are -- as in

12   all cases regardless of the subject matter, there are some

13   people where experts are identified that actually the defense

14   might agree to some stipulation as to particular evidence

15   that needs an authentication foundation and the like, but

16   that they would be identified, their subject matter, their

17   testimony would be identified.

18        But then there is the opportunity with respect to

19   one or more of those people for the defendant to file a

20   motion questioning their -- either the qualification or the

21   scope of the testimony from what I understand that there are

22   going to be one or more experts in which the defense wants to

23   get a better understanding of what the scope is, might want

24   to challenge the scope.

25        But it is better to have the statement of what the

testimony is going to be and the scope of the testimony so
that we can really focus and litigate the issue that needs to
be litigated as opposed to just some general objection.

And you are all good lawyers and I know that you
will focus on that so that we in fact end up presenting to me
the matters that really need to be decided.

But we have a place in process for doing that.

MR. SAMUEL:  We also filed a particularized *Brady*
motion maybe a week and a half ago.  I have talked with the
government.  They are going to respond.

We don't expect the Court to be involved in that,
but if there is -- if the issue is joined on that, we will
let the Court know immediately.

THE COURT:  Yeah, the sooner there are issues
joined, the better for me, because I can see where we would
plug that into an already pretty aggressive schedule.

All right.  Anything else?

MR. WAHID:  Your Honor, Mr. Sadequee would like to
say something.

THE COURT:  Actually that's a very sensitive
microphone.  You might want to -- it will pick up even a
soft-spoken voice.

THE DEFENDANT:  Good morning.

I wanted to ask if dropping some of the names or
individuals for the depositions, will that allow the time

1  schedule to be collapsed?

2          THE COURT:  I mean, that's a good question.  The

3  schedule takes into account other statutory obligations that

4  the Court has and that you have and your lawyers have.  So

5  even if one or more of the witnesses, if you were to tell me

6  today that you wanted to eliminate all of them, I think it's

7  unlikely, as I have reviewed the schedule -- and I really

8  reviewed the schedule over the weekend without much regard to

9  the Rule 15 motion, because I think we can work with that

10 motion in the context of the schedule.

11         I have looked at it more does the existing schedule

12 provide enough time for everybody, including you and your

13 lawyers, to respond to what needs to be done between now and

14 the time that we go to trial.

15         So I don't think it does.  And until -- even if you

16 were to eliminate all of your Rule 15 requests for

17 depositions, I do not think that it would allow the case to

18 be tried sooner.

19         THE DEFENDANT:  My other question was will filing

20 some sort of a motion to start the speedy trial clock allow

21 any -- the time schedule to be collapsed?

22         THE COURT:  Well, you know, whether somebody files

23 a speedy trial motion or not, I'm always aware of that.  In

24 fact, we manage our cases against the requirements of the law

25 as it relates to speedy trial.

1          And in reviewing the schedule and reviewing the

2    pending matters, my personal belief is -- which is not to

3    prohibit you from filing the motion, but my personal belief

4    is that because there are so many pending motions that have

5    to be decided on R&Rs and because, as I have told you and

6    I hope that you understand from just looking at the work

7    product that I have produced on the motions, that those

8    pending motions generally are taken out of the speedy trial

9    calculation.

10          And even though I might have been able to take

11    longer on those motions than I have, we have not taken the

12    amount of time that most judges I think would take.  We have

13    really worked hard on those.  I issued those just as soon as

14    I can, consistent with what the statute requires with respect

15    to review before the motions are allowed to be docketed.

16          So -- and I think all of these matters you can talk

17    to your counsel about.  They are both very, very good

18    lawyers.  And I will let you know that they have been in

19    contact with me already about making sure that we get this

20    case tried as promptly as possible, but at the same time do

21    so in a way that your rights aren't prejudiced.

22          And it's been that that has persuaded me that the

23    schedule that's in place is the right schedule.  And to try

24    the case on the schedule that I have put into place I think

25    is ambitious, but I think it's the right schedule to make

1  sure everybody's rights are protected.

2        But you have my commitment, as I hope you have

3  already seen, that we have spent and I have invested an

4  immeasurable amount of time to make sure that this case gets

5  tried according to the existing schedule.

6        So I hope that answers your question.

7        THE DEFENDANT:   I also wanted to ask about I'm

8  considering going *pro se.*  And I understand that there is a

9  number of categories, like standby counsel.  And perhaps my

10  attorneys have spoken with you about this.

11        If I do go *pro se*, would I be allowed to have my

12  attorneys as standby counsel?

13        THE COURT:  Well, let me take that question in two

14  parts.

15        The first is I guess your general statement that

16  you are thinking about going *pro se*.  I have -- I have been a

17  lawyer for 30 years, I have been in all sorts of practices

18  including criminal defense practices, and I guess today I am

19  more convinced than ever that in a case especially like this,

20  there are so many legal issues, that you need to have a

21  lawyer representing you.

22        I begin with the belief based upon what I have seen

23  is that you are a bright man, that you have intellectual

24  capabilities that exceed the average citizen that I see, but

25  even the smartest people and those that are willing to devote

literally every waking moment to try and defend themselves in
a case like this is would be a really bad and inadvisable
decision on your part.

This is just -- I mean, even for me as we get into
the issues, especially as we get into the issues that are
upcoming, and I have been doing this for long time, I have to
sit back as somebody who is trained to do this work and still
refresh my memory, think about what other cases are out
there, that your experience, the experience of a lawyer, is
critical in case like this.

So, one, I think it would be a terrible decision on
your part to decide to do this on your own, because it is
very, very hard work.  And if you want your rights to be
fully protected, the best way to do that is to have a
lawyer.

I would encourage you to continue to discuss this
matter with your counsel.  Let them in a longer session with
you begin to maybe explain to you how the issues especially
as we get closer to trial and at trial become more and more
difficult.

And I will give you an example.  I mean, I tell
people in trials all the time that of all things that I think
lawyers do and judges do, there is nothing more dynamic than
a trial, because ultimately it's people testifying, it's
involving human conduct.  And inasmuch as you might know how

1    things are going to come out and what things are going to

2    happen, you never know.  I never know.

3            And so unless you have lots and lots of experience

4    like your current lawyers, something could happen at trial

5    where they will know right away to file an objection and to

6    assert an objection and make me make a legal ruling.  It is

7    very difficult for you to identify those things because you

8    haven't been doing this for twenty years or thirty years.

9            And that's why I think you have to have a much

10   fuller discussion with Mr. Samuel and Mr. Wahid, both of whom

11   are accomplished lawyers, and to think very, very carefully

12   about even going the next step about what might be available

13   as a resource to you in connection with the litigation of a

14   serious criminal matter like this.

15           So I can't tell you how strongly I would advise you

16   that it would be perilous for you to try to do this on your

17   own because these are hard issues.  And frankly, you have got

18   two of the best lawyers in the country doing this for you,

19   which is unusual to have that kind of representation that you

20   have.

21           THE DEFENDANT:   I was also asking if for the very

22   same reasons as you have mentioned, if I could have them as

23   standby, like maybe I would just interview one or two

24   witnesses.  Other than that, I would prefer to, you know,

25   follow that advice as you have laid out.  Would that be

1    possible?

2          THE COURT:  That's a variation on what you first

3    requested.

4          Let me ask you to do this, Mr. Sadequee.  When you

5    think further and more thoroughly about what role, whether

6    it's a big role or a limited role as you just explained, it's

7    easier for me to make that decision based upon what it is

8    exactly that you might ultimately decide to do.  And it

9    certainly doesn't preclude that you might decide that your

10   lawyers would handle everything.

11         So I'm not saying you can't make that

12   request.  What I would encourage you to do is to have a long

13   discussion with Mr. Wahid and with Mr. Samuel or with just

14   one of them to think about what it is that you would actually

15   like for me to consider in connection with the request to

16   represent yourself and what the scope of that would look like

17   so that I have a better feel for what exactly you want to do

18   and then what would be the proper judicial response to that

19   request.

20         THE DEFENDANT:  I have spoken about this issue

21   with both my attorneys on a number of occasions, and they

22   expressed that they are not sure whether or not a judge would

23   allow standby counsel.  I mean, sometimes it's standby and

24   sometimes it's a hybrid or various categories.

25         So I was wondering, if that is possible to have a

hybrid, for example, then that is my preference.

THE COURT:  Well, again, I think that rather than fielding this request in this status conference -- and I really haven't even thought about this until you brought it up today -- why don't you try to come up with a better articulation about what exactly you want me to consider.

And I will tell you this.  This is like every other issue in this case, I will have to go back and research that, I will have to, based upon what the facts are that you would present to me as far as exactly what you want, I will have to personally go back, because I can't remember everything because this is a dynamic process.

This is a great example of how dynamic it is, that once I get a specific request for a specific thing, then I'm the kind of judge that is going to go back and say what does the law say about that, what is my obligation, what are the alternatives that I have based upon existing case law to respond to the request that you make to me.

So none of those things I'm foreclosing.  What I'm saying is that I'm just -- I'm not prepared today to answer that because I don't have enough information to decide what the real issue is and what the law is that I have to follow.

THE DEFENDANT:  One last question.  Back to the previous question.  If I file a motion for speedy -- starting

the clock for speedy trial, I understand, Judge, you

mentioned by safeguarding some of my rights in some motions

such as the baggage search and luggage search, I'm willing to

like, you know, sacrifice those motions and, you know, drop

them.

At this moment I'm mainly concerned in trying to

speed up, you know, collapsing the schedule.  So I'm willing

to, the depositions, the motions from outside to, you know,

drop them if it in fact -- if in fact it will assist in

collapsing the schedule.

THE COURT:  Most of the motions we -- I mean, we

only have three motions pending.  I mean, we have decided

most of the motions.  And I considered the schedule knowing

that we had issued orders with respect to most of the

motions and knowing where I am and knowing what instructions

I have given to my clerks who are helping me as to where

we are going to -- how soon we could get the other orders

out.

And so I will repeat what I said earlier, which is

knowing the status in my chambers as far as what I need to do

to get orders out on those last three motions -- and what

I mean are the motions generally for suppression, there are

R&Rs to me from the Magistrate Judge, that we are about done

with those.

And I knew that when I reached the opinion that

this schedule was the right schedule for these cases to
protect your rights and for the processing of the case to
reach a just decision in your trial.

So I don't think dropping those motions are
going to affect the ability to collapse the schedule at all,
and I think you should keep those motions pending, let us
make decisions on them, because it is not going to take that
long for you to get a decision from me on what is left to
decide.

MR. WAHID:  Nothing else from us.

MR. SAMUEL:  Thank you, Your Honor.

THE COURT:  Anything from the government in
response to what the defense has raised?

MR. McBURNEY:  No, sir.

THE COURT:  All right.  Then we will adjourn this
hearing and reconvene in the next few minutes for the
classified meeting.

MR. MARTIN:  Your Honor, my client would like to
address you again about an issue that he just raised for the
first time at counsel table similar to what Mr. Sadequee --
the discussion you had with Mr. Sadequee.

And I don't know if you want to do that now or
later.

THE COURT:  I think we probably ought to do that
now.  Is he downstairs?

1          THE MARSHAL:  He's downstairs.

2          THE COURT:  Why don't we take a short break.  Let's

3   get Mr. Ahmed back up, and then we will reconvene here before

4   we go back and have our further discussion.

5          Okay.  We will be in recess.

6              (Proceedings adjourn at 11:15 a.m.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                     C E R T I F I C A T E

2

3    UNITED STATES OF AMERICA        :
                                     :
4    NORTHERN DISTRICT OF GEORGIA    :

5

6            I, Nicholas A. Marrone, RMR, CRR, Official Court

7    Reporter of the United States District Court for the Northern

     District of Georgia, do hereby certify that the foregoing 29
8
     pages constitute a true transcript of proceedings had before
9
     the said Court, held in the city of Atlanta, Georgia, in the
10
     matter therein stated.
11
             In testimony whereof, I hereunto set my hand on
12
     this, the 29th day of January, 2009.
13

14

15

16
                         /s/ Nicholas A. Marrone
17            _____
                         NICHOLAS A. MARRONE, RMR, CRR
18                       Registered Merit Reporter
                         Certified Realtime Reporter
19                       Official Court Reporter
                         Northern District of Georgia
20

21

22

23

24

25