# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> v. <br> EHSANUL ISLAM SADEQUEE, <br> Defendant. | 1:06-cr-147-WSD |

## OPINION AND ORDER

This matter is before the Court on Defendant Ehsanul Islam Sadequee's ("Defendant Sadequee") Motion for a New Trial [590].

**I.  BACKGROUND**

On August 12, 2009, Defendant Sadequee was convicted of four counts: (1) conspiring to provide material support to terrorists, (2) providing and attempting to provide material support to terrorists, (3) conspiring to provide material support to a designated foreign terrorist organization, namely Lashkar-e-Tayyiba ("LeT"), and (4) attempting to provide material support to a designated foreign terrorist organization, namely, LeT [347, 588].

On August 21, 2009, Defendant Sadequee filed his Motion for New Trial [590], requesting that the Court grant a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(c)(1), or, in the alternative, a new trial pursuant to

Federal Rule of Criminal Procedure 33(b)(2). In the Motion, Defendant Sadequee asserts three grounds for judgment of acquittal or a new trial:

> (1) that the Court "erred in denying defendant's Motion for Judgment of Acquittal on Counts 4 and 5,[1] based on the government's failure to prove that L.E.T. was a Designated Terrorist Organization in 2004 and 2005," or "that the successor organization, [Jammaat-U-Dawaah ("JUD")], was a designated terrorist organization";
>
> (2) that he "requested that the court instruct the jury on numerous principles of law that were presented in his Requests to Charge and which were argued at the charge conference," and the "failure to instruct the jury in accordance with these principles of law" was error; and
>
> (3) that the Court's denial of his pretrial "motions to suppress statements he made to law enforcement officers at JFK Airport in New York City (Doc. #87)" and his "motion to suppress physical evidence seized from his luggage prior to his departure on a flight to New York in August, 2005 (Doc. #88)" was "erroneous."

Def.'s Motion for New Trial, 1-2. Defendant Sadequee requested that the Court delay ruling on his Motion for New Trial until the trial transcript was completed and he had the opportunity to brief the issues outlined in his Motion.

The transcript of the trial was made available to Defendant Sadequee and the Government on September 2, 2009. On October 2, 2009, the Court ordered Defendant Sadequee, on or before October 9, 2009, either to file a supplemental

---

[1] The Court assumes that Defendant Sadequee means Counts Three and Four, and not Counts Four and Five. There is no Count Five in the Indictment on which Defendant Sadequee was tried.

2

brief to his Motion for New Trial or advise the Court that his Motion should be considered only on the submission that was filed [600]. On October 9, 2009, Defendant Sadequee filed his Supplemental Authority for Motion for New Trial [603]. Defendant Sadequee provided additional support for his challenge to the sufficiency of the LeT evidence as to Counts Three and Four, and reiterated his argument that the Court erred by failing to "instruct the jury on numerous principles of law that were presented in his Request to Charge." Def.'s Supplemental Authority for Def.'s Motion for New Trial ("Def.'s Supplemental Authority"), 2-5.[2] The Government filed its Response on October 16, 2009 [606], and Defendant Sadequee filed his Reply on October 21, 2009 [610].[3]

## II. DISCUSSION

### A. The Standards on Motion for Judgment of Acquittal and Motion for New Trial

Federal Rule of Criminal Procedure 29 authorizes a court to enter a judgment of acquittal after the jury has returned a guilty verdict if the court determines that the evidence presented at trial is insufficient to sustain a

---

[2] Defendant Sadequee did not address the Court's rulings on motions to suppress that were filed in this case.

[3] The Court notes that Defendant Sadequee's Reply was due to be filed on October 19, 2009.

3

conviction. See Fed. R. Crim. P. 29. In considering a Rule 29 motion after the jury reaches a verdict, the Court "must decide whether the evidence, examined in a light most favorable to the Government, was sufficient to support the jury's conclusion that the defendant was guilty beyond a reasonable doubt" of the offense on which judgment of acquittal is sought. United States v. Williams, 390 F.3d 1319, 1323 (11th Cir. 2004). "All credibility choices must be made in support of the jury's verdict," and "a jury is free to choose among reasonable constructions of the evidence." Id. "[I]t is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." Id. at 1323-24 (citing United States v. Young, 906 F.3d 615, 618 (11th Cir. 1990)); see also United States v. Grigsby, 111 F.3d 806, 833 (11th Cir. 1997) (same).

Federal Rule of Criminal Procedure 33 authorizes the court, on motion by the defendant, to vacate a judgment and grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a); see also United States v. Pedrick, 181 F.3d 1264, 1266-67 (11th Cir. 1999); United States v. Wilson, 894 F.2d 1245, 1252 (11th Cir. 1990). "A motion for a new trial is addressed to the sound discretion of the trial court." United States v. Martinez, 763 F.2d 1297, 1312 (11th Cir. 1985).

4

If a defendant moves for a new trial based on the weight of the evidence, a court may set aside the verdict, grant a new trial, and submit the issues for determination by another jury if the court concludes that, "despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred." Id. (internal quotations omitted). Courts should grant motions for new trials sparingly, with caution, and only in those "really exceptional cases." Id. at 1313 (internal quotations omitted) (noting that motions for new trials based on weight of the evidence are not favored).[4]

## B. The Sufficiency of the Evidence on Counts Three and Four

Defendant Sadequee contends that the evidence presented at trial was insufficient to convict him of Counts Three and Four. Under Counts Three and Four, the Government had to prove, among other things, that Defendant Sadequee

---

[4] Because Defendant Sadequee challenges the sufficiency of the evidence on Counts Three and Four, the Court assumes Defendant Sadequee seeks judgment of acquittal and a new trial on these claims. Defendant Sadequee does not specify what remedy he seeks with respect to the Court's jury instructions and suppression motion rulings. The Court analyzes these claims only under Rule 33, because they do not involve a challenge to the sufficiency of the evidence. See United States v. Torkington, 874 F.2d 1441, 1444-45 (11th Cir. 1989) (holding that a district court must find the evidence insufficient to support a conviction before granting a motion for acquittal under Rule 29).

conspired to provide material support or resources to LeT and attempted to provide material support or resources to LeT.

### 1. Whether Defendant Sadequee Is Entitled to Judgment of Acquittal on Counts Three and Four

Defendant Sadequee contends that the Government failed to present at trial sufficient evidence that Syed Haris Ahmed ("Defendant Ahmed"), Defendant Sadequee's co-defendant and co-conspirator, or Defendant Sadequee, had any contact with LeT, and he therefore is entitled to judgment of acquittal on Counts Three and Four. Specifically, Defendant Sadequee argues that the Government "fail[ed] to prove that L.E.T. was a Designated Terrorist Organization in 2004 and 2005 (i.e., that it even existed at that point in time), or that the successor organization, J.U.D. was a designated terrorist organization." Def.'s Motion for New Trial, 2. Defendant Sadequee contends that after LeT was banned by the Pakistani government, it "stopped all operations," and therefore "there was no LeT for Mr. Ahmed to be recruited by when he visited in 2005." Def.'s Supplemental Authority, 2-3. Defendant Sadequee suggests that if Defendant Ahmed met with anyone in 2005, it would have been with JUD, which was not then a designated foreign terrorist organization. Id. at 3.

In its Response, the Government showed that evidence was presented at the trial that LeT was a designated foreign terrorist organization in 2005 when

Defendant Sadequee conspired and attempted to provide it material support and when Defendant Ahmed met with its representatives in Pakistan. The evidence, which was substantial, included: (1) LeT was first designated as a foreign terrorist organization in 2001, and was redesignated in 2003 and 2008, the designation not having been revoked; (2) despite Pakistan's official "ban" of LeT in 2002, LeT continued to exist, and the on-line chats between Defendant Sadequee and his co-conspirators supported that Defendant Sadequee and his co-conspirators were aware of LeT's existence; (3) the Government's expert witness, Evan Kohlmann, testified that LeT continued to exist and operate after it was banned and that "JUD" was simply a name it used to operate publicly; and (4) Defendant Sadequee's evidence that in 2006 the Department of State amended LeT's designation to include its use of the alias JUD which demonstrates that LeT continued to exist and merely used the name JUD as a front. Govt.'s Response, 6-10. The Court finds that the Government introduced ample evidence at trial from which a reasonable jury could conclude that LeT existed in 2005 and all other relevant times alleged in the Indictment.

In response to the Government's evidence, Defendant Sadequee, in his Reply, asserts that the Government "erroneously states defendant's position is that LeT ceased to exist as a designated foreign terrorist organization." Def.'s Reply, 1.

This position is asserted in his Reply even though in his Motion for New Trial Defendant Sadequee specifically argued that the Government "fail[ed] to prove that L.E.T. was a Designated Terrorist Organization in 2004 and 2005 (i.e., that it even existed at that point in time)." Def.'s Motion for New Trial, 2. In taking this revised position, Defendant Sadequee concedes that LeT existed in 2005 and was then a designated foreign terrorist organization. He now argues that, because LeT was banned in Pakistan, it did not operate "openly," and, therefore, Defendant Ahmed's contact "with individuals in Pakistan regarding training or other activity related to 'violent jihad' could not have been with the designated entity LeT." Def.'s Reply, 1. Defendant Sadequee appears to claim that since LeT did not operate openly, Defendant Ahmed could not have "met openly with so called commanders or recruiters." Id. Defendant Sadequee contends that if Defendant Ahmed met with anyone, he met with JUD representatives and, in 2005, JUD had not yet been designated a foreign terrorist organization. This tortured new twist on Defendant Sadequee's position is not persuasive.

The evidence presented at trial does not support Defendant Sadequee's argument that Defendant Ahmed could not have met with LeT representatives in Pakistan. Even if LeT was officially banned in Pakistan at the time of Defendant Ahmed's meeting, it does not necessarily follow that Defendant Ahmed "could

8

not" have "met openly" with LeT representatives. In fact, the evidence presented at trial demonstrates that he met with LeT representatives in 2005.

The Government's evidence shows that, in 2005, Defendant Sadequee and his co-conspirators sought to join LeT as part of their pursuit of violent jihad. In an April 21, 2005 on-line chat, Defendant Sadequee told Defendant Ahmed and co-conspirator Aabid Hussein Khan that they should join "LT due to them being the same Aqeedah [creed]." Doc. 593, 379-80. Khan, who had direct links to LeT and other terrorist organizations in Pakistan, did not respond by stating that they could not meet with LeT representatives or join LeT because the group was banned, nor did he say they could only meet with JUD representatives or join JUD. He replied, "LT if we can get on good terms with some brothers." Id. at 380. The evidence shows that Defendant Sadequee and his co-conspirators intended to establish ties with LeT and they believed that it would be possible to do so.

Even if Defendant Ahmed did meet with "JUD representatives," the evidence at trial was that JUD representatives and LeT representatives were one in the same. Kohlmann testified that while the Pakistani government banned LeT in 2002, LeT continued to operate publicly by changing its name and "insisting that they were a completely new organization with no prior links to the previous organization, even though they had the same leadership, the same spokesman, and

9

the same agenda." Doc. 595, 1010-11. Kohlmann testified that, in 2005, LeT continued to conduct training camps in Pakistan and was accepting new recruits for them. Id. at 1012, 1014. Kohlmann made it clear that LeT continued to operate as a terrorist organization while it made a public attempt to change its name to JUD in an effort to masquerade as a different entity:

> Q: So in 2005 one could not actually go see an LeT recruiter?
>
> A: Yeah, you could. Again, this was just for show. If you showed up at a [JUD] office, Abdullah Muntazir, who is the spokesman for [LET], is also the spokesman for [JUD]. It's the same thing. If you go speak with Abdullah Muntazir or a recruiter for [JUD], you are speaking with a recruiter from [LET]. They just changed the name, that's it.
>
> Q: But technically in 2005 LeT did not exist?
>
> A: No, it existed . . . . In fact, if you go there, I mean, they still call themselves [LET] among themselves. They just don't advertise that openly anymore because they realize there are legal implications to that.

Doc. 596, 1098-99.

The evidence demonstrates that, when Defendant Ahmed went to Pakistan, he intended to join LeT and LeT simply was using JUD as its front. There is no evidence to support Defendant Sadequee's theory that Defendant Ahmed met with representatives of JUD or that JUD was an entity separate from or different than LeT. Based on the on-line chats between Defendant Sadequee and his co-conspirators and Kohlmann's testimony, there was sufficient evidence at trial for a

reasonable jury to conclude that Defendant Ahmed went to Pakistan with the intention of meeting with LeT representatives and joining LeT, that the individuals with whom he met were from LeT, and that Defendant Ahmed knew of their LeT affiliation. Because there was sufficient evidence to support the jury's conclusion that Defendant Sadequee conspired to provide material support or resources to LeT and attempted to provide material support or resources to LeT, the Court denies Defendant Sadequee's motion for judgment of acquittal on Counts Three and Four.

### 2. Whether Defendant Sadequee Is Entitled to a New Trial on Counts Three and Four

For all of the reasons set forth above, Defendant Sadequee has failed to establish that the interest of justice requires a new trial on Counts Three and Four. The Court finds that the evidence does not "preponderate heavily against the verdict." See Martinez, 763 F.2d at 1313. This is not one of those "exceptional cases" where the Court should exercise its discretion to disregard the jury's verdict and order a new trial on Counts Three and Four. See id.

### C. The Court's Jury Instructions

Defendant Sadequee contends that he is entitled to a new trial based on the Court's failure to "instruct the jury on numerous principles of law that were presented in his Requests to Charge . . . some of which properly defined the actual crimes with which he was charged and which properly reflected the prevailing law;

11

and some of which properly defined defenses to the allegations." Def.'s Motion for New Trial, 2.  Defendant Sadequee does not identify which charges he claims the Court should have or should have not given.[5]

The Court's jury instructions were thoroughly discussed and considered by the Court.  Both parties filed requests to charge, Docs. 560, 561, and supplemental requests to charge, Docs. 567, 568.  The Court held a lengthy charge conference, during which Defendant Sadequee had ample opportunity to present arguments in support of his requests to charge.  See Doc. 596, 1254-1351.[6]  Without any specific challenges to the Court's jury instructions, let alone any factual or legal basis to support the contention that the Court erred in them, the Court concludes the charge given was correct and the interest of justice does not otherwise demand a new trial.

---

[5] The most specific allegation Defendant Sadequee makes is in a heading in his supplemental brief, which simply states:  "The Court erred in failing to adequately instruct the jury on the First Amendment issues thus contributing to jury confusion over what constitutes illegal conduct and what is protected speech." Def.'s Supplemental Authority, 5.  Defendant Sadequee does not indicate which of the Court's specific rulings regarding First Amendment issues and potential charges were erroneous.  Moreover, the Court fully considered Defendant Sadequee's arguments on the First Amendment during the charge conference.  The charge given was, in the Court's view, the correct charge.

[6] The Government also filed an additional brief addressing Defendant Sadequee's lesser-included offense instruction, which Defendant Sadequee subsequently withdrew.  See Docs. 571, 580.

### D. The Court's Suppression Rulings

Defendant Sadequee claims that he is entitled to a new trial because the Court erred in denying two of his suppression motions. Defendant Sadequee specifically argues that the evidence acquired during his interview at John F. Kennedy International Airport in August 2005 and the related search of his luggage should have been suppressed.

The parties exhaustively briefed the issues presented in these motions prior to Defendant Sadequee's trial. See Docs. 241, 242, 246, 267, 280, 281, 300, 302 (regarding Defendant Sadequee's motion to suppress statements); Docs. 241, 242, 246, 269, 299, 301 (regarding Defendant Sadequee's motion to suppress physical evidence). The Magistrate Judge considered the motions, recommended the motions be denied, and the Court, in its lengthy orders, denied the suppression motions that were filed. See Docs. 288, 289, 292, 293, 368, 383.[7] There is no new evidence or legal authority to discredit the Court's earlier rulings on the motions and the Court finds the interest of justice does not require a new trial based on the Court's suppression motion rulings.

---

[7] Defendant Sadequee now simply asserts that the Court's rulings were "erroneous," without providing any additional argument or citation of authority. Def.'s Motion for New Trial, 1-2. Defendant Sadequee does not even address this argument in the supplemental brief he filed with the Court. See Def.'s Supplemental Authority.

### III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant Ehsanul Islam Sadequee's Motion for a New Trial [590] is **DENIED**.

**SO ORDERED** this 10th day of November, 2009.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE