IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

```
UNITED STATES OF AMERICA        :
                                :      CRIMINAL ACTION
         v.                     :
                                :      NO. 1:06-CR-147-WSD
EHSANUL ISLAM SADEQUEE          :
```

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, through its counsel, Sally Quillian Yates, Acting United States Attorney for the Northern District of Georgia; and Christopher C. Bly, Alexis L. Collins, and Robert C. McBurney, Assistant United States Attorneys; respectfully submits this Sentencing Memorandum for the sentencing of Defendant Ehsanul Islam Sadequee, scheduled for December 14, 2009. For the reasons set forth below, the Government believes that Defendant Sadequee should receive a term of 20 years in custody, to be followed by a lifetime period of supervised release.

### BACKGROUND

Defendant Sadequee was charged in a four-count superseding indictment with conspiring to provide material support to terrorists (Count 1); providing and attempting to provide material support to terrorists (Count 2); conspiring to provide material support to a designated foreign terrorist organization, namely, Lashkar-e-Tayyiba ("LeT"), (Count 3); and attempting to provide material support to the same designated foreign terrorist organization, LeT (Count 4). (Doc 347). Defendant was found guilty of all Counts after a seven-day jury trial. (Doc 588).

After Defendant Sadequee's conviction, the United States Probation Office prepared a Presentence Report ("PSR"). The PSR calculates a final adjusted offense level of 45, which includes a 12-level enhancement pursuant to U.S.S.G. § 3A1.4 (the "terrorism enhancement"), because Defendant's offenses involved, or were intended to promote, a federal crime of terrorism. PSR at 13-17. The terrorism enhancement also mandates that Defendant receive a criminal history category of VI, which is accurately reflected in the PSR. See U.S.S.G. § 3A1.4(b); PSR at 18. With an offense level of 45 and a criminal history category of VI, Defendant has a Guidelines custody range of life. PSR at 25. However, Defendant's statutory maximum sentence is 720 months or 60 years. Id.; see also 18 U.S.C. §§ 2339A and 2339B.[1]

The Government submitted factual and legal objections to the PSR on October 13, 2009, which are attached in full to the final, amended PSR prepared by the Probation Officer and presented to the Court. None of the Government's objections affects Defendant's Guidelines custody range.[2] Defendant Sadequee timely submitted a series of factual and legal objections to the PSR. These, too, are

---

[1] The statutory maximum sentence for violating 18 U.S.C. §§ 2339A and 2339B is fifteen years.

[2] The Government did object to the Probation Officer's calculation of the authorized term of supervised release. The PSR has since been amended to reflect a possible term of supervised release of any term of years or life. See 18 U.S.C. § 3583(j); PSR at 26.

attached to the final PSR provided to the Court; if sustained, several of these objections, discussed in detail below, would affect the Defendant's Guidelines calculations.

In the following pages, the Government will first explain why Defendant's Guidelines objections should be overruled and then provide support, through an analysis of the § 3553(a) factors, for its recommendation of a 20-year custodial sentence for Defendant Sadequee.

## I. DEFENDANT'S GUIDELINES OBJECTIONS

**A.    The Court need not determine the object or objects that support the § 2339A conspiracy convictions.**

Citing U.S.S.G. § 1B1.2(d) and its commentary, Defendant Sadequee first asserts that "when there are two underlying 'objects' of the material support" conspiracy, this Court must find beyond a reasonable doubt which object was proven. Sadequee PSR Objections at ¶ 4. Defendant Sadequee was convicted of two conspiracy counts, Counts 1 and 3. Since Count 3 was a single-object conspiracy -- providing material support to a single foreign terrorist organization (LeT) -- Defendant Sadequee presumably intends his argument to apply only to Count 1. It is not clear, however, that § 1B1.2(d) applies to this count. Assuming without conceding that it does, there was more than enough evidence presented at trial for this Court to find beyond a reasonable doubt that Defendant conspired to provide and actually provided material support, knowing or intending that the support would assist <u>both</u> a

conspiracy to murder outside the United States (18 U.S.C. § 956(a)) and acts of terrorism inside the United States that transcend national boundaries (18 U.S.C. § 2332b).

United States Sentencing Guideline § 1B1.2(d) provides that a conviction for a conspiracy to commit more than one offense should be treated as if the defendant had been convicted on a separate count of conspiracy for each offense that the defendant conspired to commit.  The commentary to this provision notes that

> [p]articular care must be taken in applying subsection (d) because there are cases in which the verdict or plea does not establish which offense(s) was the object of the conspiracy.  In such cases, subsection (d) should only be applied with respect to an object offense alleged in the conspiracy count if the court, were it sitting as a trier of fact, would convict the defendant of conspiring to commit that object offense,

subject to an exception not applicable here.  U.S.S.G. § 1B1.2(d), cmt. n.4.

The Eleventh Circuit has interpreted this provision to require district courts, when faced with a general jury verdict that a defendant conspired to commit multiple offenses, to find beyond a reasonable doubt which objects the defendant conspired to commit. United States v. McKinley, 995 F.2d 1020, 1026 (11th Cir. 1993). Judicial fact-finding in aid of sentencing is otherwise conducted using a preponderance of the evidence standard.  United States v. Smith, 480 F.3d 1277, 1281 (11th Cir. 2007).

Unlike the general conspiracy statute in 18 U.S.C. § 371, 18 U.S.C. § 2339A does not merely criminalize a conspiracy to commit

4

some other offense.  Instead, it prohibits the act of providing or conspiring to provide material support with a specific knowledge or intent.  This is consistent with the Sentencing Guidelines' general treatment of § 2339A substantive violations under the aiding and abetting provisions in U.S.S.G. § 2X2.1 and not as a conspiracy under U.S.S.G. § 2X1.1.

Even where § 2339A is charged as a conspiracy, as it is in Count 1, U.S.S.G. § 1B1.2(d) arguably does not apply because the predicate offense relates to the mens rea element rather than forming an independent course of action to be undertaken by the conspiracy.  The Government could locate no case in which U.S.S.G. § 1B1.2(d) and application note 4 were applied to § 2339A, whether charged as a conspiracy or substantive crime.  The sole case cited by Defendant, United States v. Awan, No. CR-06-154 (CPS), 2007 WL 2071748 (E.D.N.Y. July 17, 2007), which involved a § 2339A conspiracy with a § 956(a) predicate offense, does not discuss U.S.S.G. § 1B1.2(d) at all.[3]

If the Court accepts Defendant's theory, it should find that both predicate offenses were proven beyond a reasonable doubt.  Of

---

[3] To the extent that the Awan court addressed the applicable standard of proof on sentencing, it did so in the context of the standard that should be used to determine the applicability of the terrorism enhancement in § 3A1.4.  Ultimately, the court held that a preponderance of the evidence standard applied, although it acknowledged in dicta that it had the discretion to apply a higher standard of proof in cases involving multiple sentencing adjustments that would result in a significant upward departure. Id. at *3 & n.12.

course, given the guilty verdicts in both trials and the unanimity instruction on the predicate offenses, there can be no doubt that the Court and the jury both found beyond a reasonable doubt that each Defendant conspired to provide material support for at least <u>one</u> of the predicate offenses.  This is enough for purposes of sentencing in this case.[4]  The Government's evidence, however, was strong enough to support a jury and a judicial finding beyond a reasonable doubt for both prongs of the charged conspiracy.

With respect to § 956(a), the Government produced overwhelming evidence establishing that in 2005, both Defendant Ahmed and Defendant Sadequee, along with co-conspirators James, Azdi, Aabid Khan and others, agreed -- that is, conspired -- to provide themselves to a conspiracy to murder outside the United States by traveling to Pakistan or Afghanistan to obtain paramilitary training from a jihadist camp and then eventually engage in violent attacks that could cause death and serious injury to others.  For example, the trier of fact was presented with e-mails and instant messages written by Defendant Ahmed and Defendant Sadequee and their co-conspirators developing their plan to get into Pakistan to join LeT or "the Students" (Taliban) and encouraging each other to

---

[4] The Government notes that there is no practical effect on Defendant's sentence regardless of whether one or both predicate offenses are found to have been proven.  There is only a one-level difference between the two predicate offenses, and Defendant's final adjusted offense level under either scenario exceeds the statutory maximum he could receive.

take steps to implement it. (See, e.g. Gov. Ex. 109 ("Mother's Day" e-mail); Gov. Exs. 105-108, 112). Moreover, co-defendant Ahmed testified, with prompting from his written admissions, about their plan and intent to obtain training for violent jihad. (See Aug. 5, 2009, Tr. at 480-482; Gov. Ex. 168).

The evidence at both trials also clearly showed that the Defendants conspired to provide the D.C. casing videos to Younis Tsouli in order to aid in their plot to gain credibility with the "jihadist brothers." For Defendant Sadequee, there was the additional evidence that the casing videos would aid in establishing the credentials of "al Qaeda in Northern Europe," the group Sadequee founded with Tsouli and Mirsad Bektasevic. (See Gov. Ex. 226; Gov. Ex. 233 at 20-26, 29-33, and 39-48; Gov. Ex. 242, 242A).

There was also sufficient evidence presented at Sadequee's trial for the jury (and now the Court) to find beyond a reasonable doubt that the Defendants agreed to provide material support with the intent to aid a § 2332b violation. First, Defendant Ahmed, in his statements to the FBI, acknowledged that he would have participated in an attack on U.S. soil if directed to do so. (Gov. Exs. 167, 168). Moreover, he, Defendant Sadequee, and the Toronto-based co-conspirators all discussed potential targets in the United States and how they might take action there. (Gov. Ex. 168). For Defendant Sadequee, the case is even stronger, as he and Tsouli

intended to use the videos in order to prepare for a future attack within the United States.  In an instant message communication with Azdi Omani, the user of sbualy@gmail.com, Sadequee admits that he and "Bond" (Younis Tsouli) were planning to release the videos he shot in Washington, D.C., in order to terrify Americans during the holidays and make them waste their resources since "nothing . . . is going to happen there for at least another good year."  (Gov. Ex. 234 at 27-30).

In addition, Sadequee, along with Aabid Hussein Khan, sought to enlist a seventeen year old American youth who used the name "Saajid" on the Tibyaan Publications web forum and who was shortly moving to the United Kingdom to prepare himself for violent jihad within the United States.  One private message from Sadequee to Saajid made Sadequee's intention chillingly clear:

> If you wish to fulfill your obligations . . . I always advice the brothers, to do what you are capable of doing to the maximum. . . . Read the chapter from "Fundamental Concepts Regarding Jihaad" the chapter of martyrdom.
>
> So, since you are a convert, and you are young, and hopefully, you haven't exposed your beliefs to those who would want to harm you. . . . **You have the capacity of fulfilling your largest obligations in your native land**. Although, yes, you have to advance and learn and get trained elsewhere.  But I know that the brothers are looking for people like you, Muslims, but at the same time, they can disappear into a kaafir assembly.

(Gov. Ex. 157 (emphasis added); see also Gov. Exs. 142 (instant message between Sadequee and Khan discussing how to respond to

Saajid's request for help preparing for violent jihad), 156 (Tibyaan Publications private message from Sadequee to Saajid encouraging him to read texts about martyrdom)).

For these reasons, regardless of whether the Court applies a preponderance or a beyond-a-reasonable-doubt standard, the Court should find that both predicate offenses of Counts 1 and 2 were proven.

**B.    Application of the Guidelines' terrorism enhancement (§ 3A1.4) does not result in impermissible "double counting."**

Defendant Sadequee next argues that "applying § 3A1.4 amounts to double-counting in a terrorism case under 18 U.S.C. § 2339A or § 2339B in conjunction with § 956 and § 2332b." Sadequee PSR Objections at ¶ 6. This Circuit's case law does not support Defendant's claim.

"Impermissible double counting occurs only when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines." United States v. Dudley, 463 F.3d 1221, 1226-27 (11th Cir. 2006) (internal quotation marks omitted). Indeed, double counting a factor during sentencing "is permitted if the Sentencing Commission . . . intended that result and each guideline section in question concerns conceptually separate notions relating to sentencing." United States v. Stevenson, 68 F.3d 1292, 1294 (11th Cir. 1995).

9

Courts are thus to presume that "the Commission intended to apply separate guideline sections cumulatively unless specifically directed otherwise." Id.; accord United States v. Perez, 366 F.3d 1178, 1183 n.6 (11th Cir. 2004) (citing United States v. Box, 50 F.3d 345, 359 (5th Cir. 1995) ("Double counting is prohibited only if the particular guidelines at issue forbid it.")).

Applying the terrorism enhancement in conjunction with the various Guidelines provisions that provide the base offense levels for the crimes at issue in this case does not result in impermissible double counting. For example, applying § 3A1.4 in conjunction with § 2A1.5 (the base offense level for a § 2339A conviction with an underlying offense of 18 U.S.C. § 956(a)) does not result in improper double counting because § 2A1.5 applies to any crime involving a conspiracy or solicitation to commit murder, regardless of whether that crime involves terrorism. Thus, the terrorism enhancement and the conduct it targets are not "fully accounted for" by application of § 2A1.5, the generic Guidelines provision applicable to all conspiracies to commit murder. See, e.g., United States v. Phillips, 363 F.3d 1167, 1169 (11th Cir. 2004) (enhancement for violation of a court order not impermissible double counting after conviction for failure to pay court-ordered child support because base offense level applied to a variety of crimes, not all of which involved violation of a court order); United States v. Naves, 252 F.3d 1166, 1168-69 (11th Cir. 2001)

10

(enhancement for carjacking not double counting after conviction for carjacking because base offense level applied to all robbery crimes). Moreover, there is no language in either § 2A1.5 or § 3A1.4 directing that the sections not be applied cumulatively; the Court must therefore presume the Commission intended for them to apply together. See Stevenson, 68 F.3d at 1294.

Similarly, there is no impermissible double counting when the terrorism enhancement is applied in conjunction with §§ 2A2.1 or 2A4.1 (the possible base offense levels for a § 2339A conviction with an underlying offense of 18 U.S.C. § 2332b). Section 2A2.1 applies to all crimes of assault with intent to commit murder and attempted murders, and Section 2A4.1 applies to all kidnappings, regardless of whether those crimes involve terrorism. Thus, as with § 2A1.5, the terrorism enhancement is not "fully accounted for" in either §§ 2A2.1 or 2A4.1. And again, nothing in §§ 3A1.4, 2A2.1, or 2A4.1 specifically directs that those sections should not be applied cumulatively; therefore, the Commission intended for them to apply together.

Finally, there is no impermissible double counting when the terrorism enhancement is applied in conjunction with § 2M5.3, the guideline section applicable to violations of § 2339B (providing material support to designated foreign terrorist organizations). The Fourth Circuit considered and rejected this same argument, holding that "[n]othing in either § 2M5.3 or in § 3A1.4 prohibits

11

the application of both provisions." <u>United States v. Hammoud</u>, 381 F.3d 316, 356 (4th Cir. 2004) (en banc), vacated on other grounds, 543 U.S. 1097 (2005). Applying the terrorism enhancement does not result in impermissible double counting, and Defendant's arguments should fail.[5]

C.    **The Sentencing Commission had the authority to impose a specific criminal history category for all defendants subject to the terrorism enhancement.**

Defendant Sadequee's final Guidelines objection challenges the terrorism enhancement in another way: Defendant, offering no case or statutory citations in support, argues that the enhancement wrongly establishes his criminal history category at VI. Specifically, Defendant argues that the Sentencing Commission had no authority to mandate a specific criminal history category based on factors other than those related to prior convictions. Sadequee PSR Objections at ¶7. However, because the Sentencing Commission acted within its authority when it set a uniform criminal history

---

[5] Defendant cites to two cases, <u>United States v. Bourne</u>, 130 F.3d 1444 (11th Cir. 1997), and <u>United States v. Garrison</u>, 133 F.3d 831 (11th Cir. 1998), in support of his argument. Neither proves his point. The <u>Bourne</u> Court merely held that the district court impermissibly double-counted the impact of a firearm in a bank robbery -- it could be used to support a brandishing enhancement or a threat of death enhancement, but not both. <u>Bourne</u>, 130 F.3d at 1447. No such duality exists here. The <u>Garrison</u> Court held that a defendant cannot receive an abuse of trust enhancement when the underlying criminal conduct is itself the abuse of trust and that fact is reflected in the specific offense Guideline. <u>Garrison</u>, 133 F.3d at 842-43. Here, as is discussed above, the terroristic nature of the defendant's conduct is in no way reflected in the specific offense guidelines.

category of VI for <u>all</u> defendants subject to the § 3A1.4 terrorism enhancement, Defendant's argument fails and his objection should be overruled.

The Second Circuit considered and rejected the argument Defendant makes here, holding that the uniform criminal history category found in § 3A1.4 does not violate due process because of both the dangerousness of terrorism crimes and the difficulty of deterring and rehabilitating those who support terrorists. <u>United States v. Meskini</u>, 319 F.3d 88, 91-92 (2d Cir. 2003) (holding that "the terrorism guideline legitimately considers a single act of terrorism for both the offense level and the criminal history category"). Simply put, "Congress and the Sentencing Commission had a rational basis for creating a uniform criminal history category for all terrorists under § 3A1.4(b), because even terrorists with no prior criminal behavior are unique among criminals in the likelihood of recidivism, the difficulty of rehabilitation, and the need for incapacitation." <u>Id.</u> at 92. "Implicit in [the Second Circuit's] decision is a finding that the Sentencing Commission did not exceed its congressional mandate in instituting this double enhancement." <u>Awan</u>, 2007 WL 2071748, at *3 n.14.[6]  Defendant's supposition that the Sentencing Commission had

---

[6] The Career Offender provision of the Guidelines, § 4B1.1(b), which similarly creates a uniform criminal history category of VI, has also been upheld. <u>See, e.g.</u>, <u>United States v. Gibson</u>, 135 F.3d 257, 260-61 (2d Cir. 1998); <u>United States v. Lawrence</u>, 889 F.2d 1187, 1190-91 (1st Cir. 1989)(Breyer, J.).

no authority to increase a defendant's criminal history category based on facts related to the crime of conviction is unsupported by any case or statute, and it should be rejected.

## II. DEFENDANT'S SENTENCE

As stated above, the Government believes that a term of 20 years in custody is a reasonable sentence for Defendant Sadequee, given the nature of his crimes and his comparative culpability vis-a-vis Defendant Ahmed, for whom the Government is recommending a lower sentence. The relevant factors set forth in 18 U.S.C. § 3553(a) support this recommendation. Those factors include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed --

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; ...

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

18 U.S.C. § 3553(a).

Nature and circumstances of the offense. While some criminal offenses are not particularly amenable to ranking on a scale of seriousness -- e.g., is wire fraud more serious than marijuana distribution? -- there can be little doubt that crimes of terrorism

14

lie at the farthest end of that spectrum. Defendant Sadequee, as a convicted terrorist, stands astride this terminus. He has, since age 14, sought to join the armed struggle waged by violent jihadists against American and allied interests around the world. (Gov. Ex. 40). For months, he and Defendant Ahmed conspired with others in Canada, the United Kingdom, Pakistan, and elsewhere to provide support for and pursue membership in foreign terrorist organizations, whether they be Lashkar-e-Tayyiba, the Taliban, or Al Qaeda in Iraq ("Two Rivers").

But Defendant Sadequee's efforts went further than Ahmed's. He forged close relationships with several now-convicted terrorists that Ahmed knew only indirectly, if at all. With these jihadist colleagues, Younis Tsouli and Mirsad Bektasevic, Sadequee sought to establish his very own terrorist organization, Al Qaeda in Northern Europe. This organization would initially be armed with the war materiel that Bektasevic was gathering in Bosnia -- plastic explosives, firearms with silencers, bomb belts, etc. -- and would benefit from Tsouli's cyber-propaganda expertise. Evidence at trial showed that Sadequee was desperately seeking passage from Bangladesh to Sweden to join these two at their new encampment; his travels were foiled only because Bektasevic and Tsouli were arrested. (Gov. Exs. 237, 247).

But there is still more that distinguishes Sadequee from Ahmed and that justifies the higher recommended sentence. Sadequee was

also a recruiter for his cause of violent jihad. His role as an administrator on Tibyan Publications exposed his views, his breadth of knowledge, and his connections to the hundreds of members of that radical on-line forum. At least two such members contacted Sadequee for information on how to "join the fight." (Gov. Exs. 128-141, 156-157). One of these was the American citizen Martin Sharp, also known as Saajid Wasi. His exchanges with Sadequee were graphic and shocking, with Sadequee emphasizing the value Sharp brought to the cause because of his location and nationality. As quoted above, Sadequee chillingly praised Sharp for his "capacity of fulfilling [his] largest obligations in [his] native land." (Gov. Ex. 157). The FBI has since learned that Sharp moved to the United Kingdom, as he and Sadequee discussed, where he married a Muslim female. According to his wife, who has since spoken with British authorities, Sharp and she soon moved to Somalia, where Sharp joined a jihadist militia and was never heard from again. Thus, while Sharp failed to live up to his "potential" as a terrorist in the United States, he nonetheless took up arms as urged by Defendant Sadequee.

Given all of this -- the nature and extent of Defendant Sadequee's involvement in several conspiracies to promote, support, and commit acts of terrorism -- a term of 20 years imprisonment is an appropriate and reasonable sentence.

History and characteristics of defendant. Defendant Sadequee, as mentioned above, has long harbored a desire to engage in violent jihad.  From his early e-mail to a conduit for Taliban recruiters in which he claimed he "always had intention of joining the Taliban (even prior to Sept. 11)" (Gov. Ex. 40), to his many strident postings on Tibyan Publications (Gov. Exs. 147, 149), Defendant Sadequee has unabashedly proclaimed, propagated, and acted upon his belief that violent jihad is the chosen path for all right-minded Muslim men, to include himself and his co-conspirators.  Thus, while it is true that Defendant Sadequee has no criminal history, i.e., convictions, it is equally true that he has an extensive history of conduct that this Court should weigh heavily when fashioning a sentence.  As the Second Circuit observed in Meskini, "even terrorists with no prior criminal behavior are unique among criminals in the likelihood of recidivism, the difficulty of rehabilitation, and the need for incapacitation." 319 F.3d at 92.

Defendant Sadequee's brief stint working at Raksha, his college studies in Dhaka, Bangladesh, and his marriage do nothing to mitigate the seriousness of his crimes or the future threat he poses.  All of these events overlapped with his terrorism conspiracy.  Indeed, from within the offices of a pro bono organization dedicated to protecting and bettering battered women of Southeast Asian origin, while serving as a paid intern and ostensibly doing the good works of this group, Defendant Sadequee

17

was in fact communicating with his foreign conspirators, posting on Tibyan, and sending his Washington, D.C., casing videos overseas. Similarly, it was _after_ Defendant Sadequee had traveled to Bangladesh to marry his sweetheart and allegedly begin his college studies that he finalized his true plans with Bektasevic and Tsouli to establish Al Qaeda in Northern Europe. These "covers" should not lessen the severity of any sentence the Court is contemplating.

Defendant Sadequee also argues that the Court should consider the conditions of his pre-trial detention when determining his sentence. (Doc 615 at 11). The Government acknowledges that Defendant Sadequee was housed in a more controlled environment than the typical pre-trial detainee, as dictated by the Bureau of Prisons' policy for terrorism defendants. The Government further agrees that conditions of pretrial confinement _may_ serve as the basis for a downward departure, see United States v. Pressley, 345 F.3d 1205, 1218 (11th Cir. 2003). Indeed, this is precisely the sort of factor that might warrant a sentence towards the low end of a particular Guidelines range. However, the Government's recommended sentence of 20 years is already far below both the prescribed Guidelines sentence (life) and the statutory maximum (60 years). The Government does not believe that Defendant should receive additional consideration based on his pre-trial confinement, especially in light of the evidence that many of his detention woes were of his own doing, to include losing phone

18

privileges for repeatedly making unauthorized three-way calls, losing property privileges for obstructing his cell door, and otherwise failing to comply with the basic rules of conduct at the jail.

Adequate deterrence and protection of the public. This factor overlaps significantly with the first factor, which addresses the nature and circumstances of Defendant Sadequee's offense. Given the gravity of his crimes and the threat that he and his co-conspirators posed, deterrence and protection are obviously paramount concerns for the Court and the Government. Defendant Sadequee's frank admission that no prison sentence is "likely to impart additional respect for the law of man," which would presumably include the laws of the United States of America, complicates this discussion. (Doc 615 at 8).

Of course, the surest means of protecting the public and deterring the Defendant for the longest period would be to incarcerate him for the entire 60 year term authorized by law and contemplated by the Guidelines. However, the Government takes a slightly more sanguine view of Defendant Sadequee's capacity for rehabilitation, even if only partial. While Defendant Sadequee would have the Court believe that much of his criminal conduct was the unfortunate byproduct of youthful indiscretion and on-line fantasies and that he has since grown out of this phase (Doc 615 at 10-11), the truth is that Defendant Sadequee, who memorized the

19

Koran at a young age, is an intelligent, cunning individual who demonstrated repeatedly that he knew what to say and how to say it to motivate others to join his cause. What this means is that Sadequee is indeed likely to be deterred from future bad conduct by a sufficiently punitive sentence, as he is perfectly capable of linking cause and effect and realizing that, in this country at least, he must cease and desist from such conduct. The Government believes that a term of 20 years is sufficient to achieve the goals of deterrence and protection.

Unwarranted sentencing disparities. Like Defendant Ahmed, Defendant Sadequee urges the Court to sentence him to a term of years that is consistent with the sentences received by his co-conspirators. (Doc 615 at 2-4). To date, there are no relevant bases for comparison, as only foreign co-conspirators have been sentenced.[7] Such sentences are not valid points of reference, as they are the product of foreign legal systems.

While Defendant is correct that the sentencing court must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), the Eleventh Circuit has limited that consideration to those unwarranted disparities in

---

[7] Defendant Ahmed's sentence, when it is handed down, will be the one relevant datum. The Government has already articulated why it believes that whatever sentence Defendant Ahmed receives, it should be less than Defendant Sadequee's.

sentences among <u>federal</u> defendants.  <u>United States v. Docampo</u>, 573 F.3d 1091, 1102 (11th Cir. 2009) ("Section 3553(a)(6) is concerned with unwarranted disparities in sentences among federal defendants.").  Simply put, Defendant is not similarly situated to those co-conspirators prosecuted in other countries, just as the defendant in <u>Docampo</u> was not similarly situated to his co-conspirators sentenced in state court.  <u>See</u> <u>id.</u> (holding that defendant Docampo, who received a 270-month sentence after trial in federal court, was not similarly situated to co-conspirators who received probated sentences after pleading guilty in state court). There is no reason to expect (or even desire) uniformity among sentences imposed by different national sovereigns; the co-conspirators' sentences in the United Kingdom and Bosnia do not serve as proper reference points for determining a sentence for Defendant.  Presumably had any of the foreign defendants received the death penalty for their involvement in Defendant Sadequee's conspiracy -- a very real possibility in certain countries -- he would not be asking the Court to consider their sentences as relevant benchmarks.

Defendant Sadequee also points to a study of "terrorism related offenses" (a term left undefined in his filing) that suggests that a term of 20 years' imprisonment would be an outlier and thus potentially disparate.  (Doc 615 at 4, Exs. A and B). Moreover, he directs the Court's attention to the federal

sentencings of several terrorists in Florida and the sentencing of a foreign armed combatant in a United States military tribunal. The wildly divergent results of these various proceedings proves the Government's point -- the facts and circumstances of each terrorism case are unique; drawing broad parallels among and across them is fraught with difficulty and is bound to yield misleading conclusions. Were there evidentiary problems with the military's case against the foreign armed combatant? Did classified information play a role in the final sentence? Was Jose Padilla's time served in a sensory-deprovation cell in a military brig something the sentencing court considered in fashioning a lower sentence?

These variables differentiate the cases Defendant Sadequee cites from his own in such a manner as to make sentencing comparisons impractical. In none of those cases was a co-conspirator arrested in possession of 40 pounds of plastic explosives, a bomb belt, and a video-taped declaration of war against Western interests, nor was any co-conspirator shown to have had direct recruiting connections with Al Qaeda in Iraq. Do those proven facts make Defendant Sadequee's case more serious? Perhaps. What is certain is that this Court is not limited by 18 U.S.C. § 3553(a)(6) from considering and imposing a custodial term of 20 years for Defendant Sadequee, given the seriousness of his crimes.

**CONCLUSION**

For the reasons stated above, Defendant Sadequee's Guidelines objections should be overruled and he should be sentenced to a term of 20 years (240 months) in prison, to be followed by a lifetime term of supervised release.

Respectfully submitted,

SALLY QUILLIAN YATES
ACTING UNITED STATES ATTORNEY

/s/ ROBERT C.I. McBURNEY
ASSISTANT UNITED STATES ATTORNEY
GA Bar No. 481070

/s/ CHRISTOPHER C. BLY
ASSISTANT UNITED STATES ATTORNEY
GA Bar No. 064634

/s/ ALEXIS L. COLLINS
ASSISTANT UNITED STATES ATTORNEY
Washington D.C. Bar No. 474599

600 U.S. Courthouse
75 Spring St., S.W.
Atlanta, GA  30303
(404)581-6000
(404)581-6181 (Fax)

## CERTIFICATE OF SERVICE

This is to certify that the undersigned has this date electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

> Khurrum Wahid
> 3191 Coral Way
> Suite 406
> Miami, Florida 33145
>
> Donald F. Samuel
> Garland, Samuel, & Loeb, P.C.
> 3151 Maple Drive, NE
> Atlanta, Georgia 30305

This 9th day of December, 2009.

> /s/CHRISTOPHER C. BLY
> ASSISTANT UNITED STATES ATTORNEY
> Chris.Bly@usdoj.gov